NINA THREADGILL, Appellant, v. UNITED RAIL- WAYS COMPANY OF ST. LOUIS.

Division One, July 9, 1919.

1. **TESTIMONY**: Competency: Abandoned Objection. An objection to the competency of a witness as an expert, for whom the court stated a reason why he was competent, to which no objection was made, after which the witness testifies without further objection, must be considered as having been abandoned.

Threadgill v. United Rys. Co.

2. ————: Harmless Conclusion. Where plaintiff had testified that as her automobile turned east to cross the railway tracks she saw a north-bound street car "coming at a rapid rate of speed and at a distance of seven or eight feet from the machine," no harm was done by the statement of a witness for defendant who testified that the street car was not more than eight or ten feet distant when the automobile turned across the track and he "saw they could not help but get hit when they turned across there."

3. ————: General Objection. A mere objection to certain testimony and a mere motion to strike it out, both in the most general terms, no reason being assigned for either the objection or the motion, will not save for review on appeal the court's ruling overruling the motion.

4. AUTOMOBILE: Highest Care Required of All Drivers: Negligence Imputed to Owner. The negligence of a seventeen-year-old son of plaintiff, who was the driver of the automobile owned by her and in which she was riding, is imputable to her, and the law imposes upon the driver, and consequently upon her, the duty of exercising the highest degree of care for the safety, not only of pedestrians and other travelers on the public street, but for herself as well; and if she is injured as the result of the collision of her automobile with a street car, she cannot recover unless her driver was at the time exercising the highest degree of care.

5. ————: ————: Statute: Contributory Negligence. The statute (Par. 9, sec. 12, p. 330, Laws 1911) requiring any person owning, operating or controlling an automobile running on or across public roads, streets or other public highways, to use the highest decree of care that a very careful person would use under like circumstances, to prevent injury to persons on such highways, and making an owner or driver failing to use such care liable for damages to any person injured, requires such driver or owner to exercise the highest degree of care to avoid collisions with street cars and other automobiles and thereby to avoid injuring himself, as well as pedestrians and travelers on the street. It supplants the common-law rule which requires such driver or owner to be in the exercise of only reasonable or ordinary care for his own safety, and makes his failure to exercise the highest degree of care contributory negligence. [Disapproving Advance Transfer Co. v. Railroad, 195 S. W. (Mo. App.) l. c. 568, and Hopkins v. Sweeney Automobile School Co., 196 S. W. (Mo. App.) 772.]

Appeal from St. Louis City Circuit Court.—*Hon. Leo S. Rassieur*, Judge.

AFFIRMED.

*R. P.* and *C. B. Williams* for appellant.

(1) The trial court erred in instructing the jury that the driver of the automobile was required to exercise the highest degree of care which a very careful person would exercise under the same or similar circumstances at the time and place mentioned in the evidence before plaintiff could recover. Advance Transfer Co. v. Chicago-Pac. Railroad Co., 195 S. W. (Mo. App.) 566; Hopkins v. Sweeney Automobile Co., 196 S. W. (Mo. App.) 772; Nichols v. Kelley, 159 Mo. App. 20; Jackson v. Southwestern Railroad Co., 189 S. W. (Mo.) 381. (2) It was error for the trial court, over the objection of the plaintiff, to permit a witness for the defendant to testify what should have been done and what should not have been done at the time of the accident to bring the driver within the rule of proper conduct. (3) The court erred in permitting a witness for the defendant, over the objection of the plaintiff, to testify that he knew the machine was going to be hit when the driver turned across the street.

*T. E. Francis, S. P. McChesney* and *Chauncey H. Clarke* for respondent.

(1) The court did not err in instructing the jury that it was the duty of the operator of the automobile to exercise the highest degree of care which a very careful person would exercise under the same or similar circumstances, since the duty to exercise such care was enjoined upon him by statute. Laws 1911, pp. 326, 327, 330. England v. Southwest Missouri Railway Co., 180 S. W. 34. (2) Appellant's second point, that the court erred in admitting evidence concerning what a careful chauffeur would have done, on the ground that such testimony was not a proper subject of expert testimony, cannot be considered by this court for the reason that no such objection was made in the trial court. Breen v. United Rys. Co., 204 S. W. 522; Kinlen v. Railroad,

216 Mo. 173; Williams v. Williams, 259 Mo. 250; De Maet v. Fidelity Storage Co., 231 Mo. 620; Torreyson v. United Railways Co., 246 Mo. 696. The only objections interposed below were, (a) that the witness was not qualified as an expert, and (b) that all the facts necessary for an expert opinion were not hypothesized. (3) Appellant's third point, that the court erred in permitting a witness to testify that he knew the machine was going to be hit when the driver turned across the street, on the ground that such testimony was a statement of a conclusion, cannot be considered by this court for the reason that no such objection was made in the trial court. Authorities supra; City of Springfield v. Owen, 262 Mo. 104.

GRAVES, J.—Action for personal injuries received whilst riding in an automobile, which ran into a street car operated by the defendant. The petition charges both common law and ordinance negligence. Several ordinances are plead, and the violation thereof assigned as negligence. A recitation of all the alleged negligence will serve no good purpose, as the plaintiff saw fit to abandon all except two theories of recovery, as shown by her requested instructions. Nor under the assignments of error here is it necessary to set out in detail the diverse defenses urged in the answer. Plaintiff's theories of a recovery are found in her requested instructions numbered 1 and 2, which read:

"1. The court instructs the jury that it is admitted that on or about the tenth day of January, 1915, there was in full force and effect in the City of St. Louis, the following ordinance: '3. Whenever any car is about to pass another car going in the opposite direction near a point where it is permissible to passengers to alight from or to board a car, said car shall proceed at a rate of speed not over three miles an hour, and the motorman, driver or person in control shall ring a warning gong or bell.'

"Now if you believe and find from the evidence that at and prior to the time of the collision in question the driver of the automobile in question knew of the existence of said ordinance and the provisions thereof and if the jury further believe and find from the evidence that on the said tenth day of January, 1915, the automobile in which plaintiff was riding was approaching or about to approach the crossing at Union and Vernon avenues going east with the intention of passing over defendant's double tracks and proceeding into Vernon avenue and that while said automobile was so approaching or about to approach said crossing and before the same had proceeded to a place of danger at said crossing, if you so find defendant's said street car in charge of its motorman was also approaching said crossing north on Union Avenue near Vernon Avenue and at such time said street car was about to pass or was proceeding in passing another street car going in the opposite direction on the said Union Avenue and near said Vernon Avenue and near a point where it is permissible to passengers to alight from or board a street car, if you so find, then it became and was the duty of the motorman in charge of defendant's said car going north on said Union Avenue to proceed in passing said street car going in the opposite direction at a rate of speed of not over three miles an hour, and to ring a warning gong or bell; and if you believe and find from the evidence that at such time and place said motorman in charge of said northbound street car ran said car at a rate of speed over three miles an hour, and at such time and place failed to ring a warning gong or bell, then the said motorman was guilty of negligence; and if you so believe and further believe from the evidence that said motorman at said time and place had run his car at a rate of speed of not over three miles an hour, or that said motorman at said time and place had rung a warning gong or bell, said collision would have been averted; and if you further believe and find from the evidence that such negligence, if any, was the direct cause of the said colli-

sion and injury, if any, to plaintiff, then your verdict must be for the plaintiff, provided you further believe and find from the evidence that before and at the time of said collision plaintiff exercised care and caution for her own safety.

"2. The court instructs the jury that if you believe and find from the evidence that on or about the tenth day of January, 1915, Union Avenue in the City of St. Louis at its intersection with Vernon Avenue was a public crossing and a place much used for travel by automobiles and other vehicles, and that on said date one of defendant's street cars going north on Union Avenue collided with an automobile in which plaintiff was riding while said automobile was being driven across the double tracks of defendant on Union Avenue to enter Vernon Avenue going east, and that plaintiff was injured in said collision; and if the jury further believe and find from the evidence that while the machine in which plaintiff was riding was approaching the said crossing at Union and Vernon avenues, and before said machine had reached a place of danger at said crossing, if you so find, the defendant's said street car in charge of its motorman was also approaching said crossing going north, and if you further believe and find from the evidence that the said motorman at the said time in so approaching said corner failed to ring any warning gong or bell and failed to exercise ordinary care to have his said car under control so that the same could be stopped on the first appearance of danger to vehicles passing over said crossing, and that such failure so to do under the circumstances, if you so find, was negligence, and that such negligence, if any, was the direct cause of the said collision and injury, if any, to plaintiff, then your verdict must be for the plaintiff, provided you believe and find from the evidence that before and at the time of said collision plaintiff was in the exercise of ordinary care and caution for her own safety."

The court refused both these instructions as asked, and modified both of them by adding to the end of each

some additional matter.  To the end of Instruction No. 1 the court added the following: ''And provided further, you find and believe from the evidence that plaintiff's son, in driving said automobile was acting for plaintiff and under her direction and control, that then before you find your verdict in her favor, you further find and believe from the evidence that her said son, in driving said automobile over and upon the public streets at the places mentioned in the evidence, was exercising the highest degree of care which a very careful person would exercise under the same or similar circumstances.''

There was also a slight interlienation in this Instruction No. 1, made by the court, but no point is made thereon in the assignment of error, and this interlineation thereby becomes immaterial.

To Instruction No. 2, supra, the court added the following: ''And provided further, you find and believe from the evidence that plaintiff's son, in driving said automobile was acting for plaintiff and under her direction and control, that then before you find your verdict in her favor, you further find and believe from the evidence that her said son, in driving said automobile over and upon the public streets at the places mentioned in the evidence, was exercising the highest degree of care which a very careful person would exercise under the same or similar circumstances.''

The court gave the instruction as thus modified.

Upon a trial before the jury the verdict and judgment were for defendant and the plaintiff has appealed.

There are but three assignments of error.  From the brief we quote thus:

''Now comes the appellant and assigns the following errors:

''(1) The trial court erred in instructing the jury that the plaintiff could not recover unless the driver of said machine, at the time of the injury, exercised the highest degree of care.

''(2) The court erred in permitting the witness B. P. Williams to give his opinion and conclusion that the

machine could not help but get hit when he saw the driver turn across the street.

"(3) The court erred in permitting the witness Lehmann to testify what the duty of the driver of the machine was at the time of and before the injury, and to testify what things the said driver was required to do in order to make himself a careful chauffeur."

Further details of facts, as the same may become necessary, are left to the opinion.

I. Leaving the worst for the last, we shall take the assignments of error in inverse order. The respondent has printed, in an additional abstract of the record, the evidence in full. The third assignment of error goes to the following state of facts in the record. Whilst the witness Lehmann was on the witness stand the following occurred:

*Abandoned Objection.*

"Q. You were in the courtroom, I believe, when young Threadgill testified? A. Sir?

"Q. You have been a chauffeur, haven't you? A. Yes, sir.

"Q. I will ask you if, from the way he testified that he approached that track, if that is according to the way a careful chauffeur would approach a track under those conditions?

"Mr. Peery: I object to that.

"The Court: Objection sustained.

"Mr. McChesney: I will ask you, Mr. Lehmann, as a chauffeur, when you drive an automobile, how would you approach a crossing there, assuming that there was a car there, for the sake of argument?

"Mr. Hamilton: I object to the question; he has not qualified as an expert on that.

"The Court: He said he was a chauffeur.

"Mr. Hamilton: I object to it for the reason that it is not competent unless he takes into consideration all the facts connected with this accident. The question

now is simply how would a careful chauffeur cross the track in front of this car?

"To which ruling of the court the plaintiff, by counsel, then and there duly excepted.

Mr. McChesney: Read the question to him, Mr. Buck.

The Court: You may state what a careful chauffeur would do in making the crossing there.  A. Like this case?

"Q.   Under these circumstances, under the same circumstances?  A. A chauffeur that had to drive from the west side of Union going south and wants to turn to East Vernon has to strike three corners, and before his turning, has to throw out his hand, slowing up his car, and make sure that his way is clear, not leave it to anybody else.

"Mr. McChesney: That is, assuming, Mr. Lehmann, as he testified, that there was another car there.

"Q.   As he testified?  A. Yes, sir.

"Mr. McChesney: That is all.

"Mr. Peery: That is all."

Young Threadgill was the driver of his mother's car at the time of the collision, and had testified in the case in the presence of the witness Lehmann.

It will be noted that the question propounded by Mr. McChesney, and to which the objection was lodged and the exception saved, was abandoned. The court indicated by his ruling that Lehmann had qualified as an expert and therefore could express an opinion. The evidence shows that he had so qualified. After the objection and ruling the counsel, McChesney, asked that the question be read, but it was not.

It appears that the court then took a hand in the game. The court framed a question for the witness to answer as an expert, and to this question and the answer thereto, there was neither objection nor exception by counsel from the plaintiff. There is no reviewable error here.

II. Mr. B. P. Williams, a business man of the city of St. Louis, was an eye witness to the accident, and was placed on the stand by the defendant. In the examination in chief the witness had said there were at least two automobiles coming down the street going to the south. He said there was a touring car, which was followed immediately by a Ford car with the top up. Plaintiff was in this Ford car and was driven by her seventeen-year-old son. The witness testified that this Ford car turned suddenly toward the east across the track upon which was coming the north-bound street car of the defendant. He had fixed the distance of the coming street car at not more than eight to ten feet from the Ford car, when the turn across the track was made, and had said that the Ford car had been following immediately behind a touring car. This was in his evidence in chief. When counsel for the plaintiff took the witness for cross-examination, he was (on such cross-examination) asked the following questions and gave the following answers:

*Harmless Conclusion*

"Q. The first time your attention was attracted to it was when you heard the crash? A. The first time my attention was attracted to the automobile?

"Q. Yes. A. No, sir; it was not. I was looking right at the automobile when it happened, and I saw they could not help but get hit when they turned across there.

"Mr. Peery: I object to that testimony and ask that it be stricken out.

"The Court: Motion overruled.

"To which action of the court the plaintiff then and there excepted."

The foregoing is the objection and exception referred to in the point made. The evidence given by the plaintiff herself was to the effect that as they turned to enter Vernon Avenue going east she discovered the north-bound street car "coming at a rapid rate of speed, and at a distance of about seven or eight feet from the machine." The difference between her testimony and

that of the witness Williams lies in the fact she says their machine was following a south-bound street car, and Williams says it was following a touring automobile, and that he saw no south-bound street car at the time. They agree on the distance of about eight feet. It was evident from the detailed facts that a collision was imminent, and there was, to say the least, no harm done by the expression of the witness, when he says: ''I saw they could not help but get hit when they turned across.''

But in addition (and fatal to the point) no reason is assigned for the objection or for the motion to strike out. Both the objection and the motion are in the most general terms. No grounds are assigned in either the objection or the motion. The point cannot be thus saved for appellate review. [Springfield v. Owen, 262 Mo. l. c. 104; Williams v. Williams, 259 Mo. l. c. 250.]

III. The debatable assignment of error is assignment number one, supra. In this case the automobile was owned by plaintiff and was being driven by her seventeen-year-old son. Plaintiff's husband was a doctor, and had treated a child for Mr. and Mrs. Cross. After the operation the doctor suggested that the son would drive them home in the car, rather than have them take a street car. The doctor told his wife that she might go along and watch the child, as it had not come from under the anesthetic as yet. The evidence shows that the car was owned by the plaintiff, and not by the doctor. The son, the driver, was therefore driving plaintiff's car, and the negligence of her driver is imputable to her.

**Highest Degree of Care.**

As stated the court modified the instructions for plaintiff by adding thereto a clause which placed upon her driver the duty of exercising the highest degree of care in the running of the machine. This the appellant assigns as error. Respondent urges that such degree of care is required by the state statute, and that the

court committed no error in so wording the instructions. Paragraph 9 of Section 12, Laws 1911, page 330, read:

"Any persons owning, operating or controlling an automobile running on, upon, along or across public roads, streets, avenues, alleys, highways or places much used for travel, shall use the highest degree of care that a very careful person would use, under like or similar circumstances, to prevent injury or death to persons on, or traveling over, upon or across such public roads, streets, avenues, alleys, highways or places much used for travel. Any owner, operator or person in control of an automobile, failing to use such degree of care, shall be liable to damages, to a person or property injured by failure of the owner, operator or persons in control of an automobile, to use such degree of care, and in case of the death of the injured party, then damages for such injury or death may be recovered, as now provided or may hereafter be provided by law, unless the injury or death is caused by the negligence of the injured or deceased person, contributing thereto."

It would seem that this statute fixes upon the driver of an automobile the duty to exercise "the highest degree of care, that a very careful person would use, under like or similar circumstances." The Springfield Court of Appeals in England v. Railroad Co., 180 S. W. l. c. 34, has so ruled.

On the other hand the Kansas City Court of Appeals in an opinion by BLAND, J., in case of Advance Transfer Co. v. Railroad, 195 S. W. l. c. 568, has taken the opposite view. In that case it is said: "It seems to us that this statute cannot but mean that the rule of 'the highest degree of care' is to be applied only to persons operating automobiles in looking out for the safety of others, and that it does not change the common-law rule that a driver is only required to exercise 'ordinary care' for his own safety. Plainly the statute was enacted to protect persons on the highways from

injury by automobiles, death-dealing machines having great potential power for danger. [See the case of Joseph I. Hopkins v. Sweeney Automobile School Co., 196 S. W. 772, decided by this court, but not yet officially reported.] We are aware of the fact that the Springfield Court of Appeals in the case of England v. Southwestern Missouri Railroad Co., 180 S. W. l. c. 34, has construed this statute contrary to the view we have taken of it, but in that case the court had already held that, applying the common-law rule of 'reasonable care,' plaintiff was guilty of contributory negligence, and by way of argument, only, the court held that, if plaintiff was guilty of contributory negligence under the common-law rule, he must be under the statutory rule, and cites the statute under discussion.''

To like effect is Hopkins v. Sweeney Automobile School Co., 196 S. W. l. c. 774, where the Transfer Company case, supra, is cited and approved, as also the Hopkins case is approved in the Transfer Company case. Both cases were handed down at the same time, and hence the cross references.

What these two cases really hold is, that as to the driver of an automobile who is injured, or whose machine is injured, or damaged, only the rule of ordinary care is applicable. They say that the statute requiring the highest degree of care is one applicable to persons traveling on or over the streets or highways. That as to such persons traveling on or over such highways he owes the highest degree of care, but as to himself, his property, or those with him, only ordinary care is required.

We cannot take this view of this statute. We think that it contemplates a rule of conduct for automobile drivers upon ''public roads, streets, avenues, alleys, highways or places much used for travel.'' That rule of conduct is to use ''the highest degree of care.''

Let us see just to what the rule established by the Kansas City Court of Appeals leads. A is driving an

automobile, exercising only ordinary care, and he collides with an automobile driven by B, and kills B; then according to the rule of that court A is liable, and properly so. But the rule does not stop here. It goes further and says that if in the collision A (who is only exercising ordinary care) chanced to be injured, instead of B, then such fact would not preclude A from recovering from B. In other words, the failure of A to exercise the highest degree of care would not be such contributory negligence as would preclude his recovery. In other words, B who did the injury would be guilty of negligence because he was not exercising the highest degree of care, but A would not be guilty of contributory negligence if he failed to exercise the highest degree of care, but did exercise ordinary care. To get at their rule differently. Both A and B, drivers of automobiles, meet and have a collision. Both are exercising only ordinary care. B chances to be lucky and A unlucky. A is injured. Under the rule of the Kansas City Court of Appeals A can recover, because B is negligent in not using the highest degree of care, and A is not negligent because (for his own protection) he has used ordinary care. We concede that the common-law rule only requires a person to exercise ordinary care for his own protection, and when such care is used there is no contributory negligence. But as NORTONI, J., in Nicholas v. Kelley, 159 Mo. App. l. c. 24, said: "This statute prescribes the obligation of high care as to all persons owning, operating or controlling an automobile running on public roads, streets, avenues, alleys, highways or places much used for travel."

The person driving a motor vehicle has a rule of conduct prescribed for him by this statute. That rule of conduct is the use of the "highest degree of care." A failure to reach the standard prescribed by the law is negligence, and if the negligence contributed to his injury he cannot recover.

Going now to the instant case. The street railway company was entitled under this law to have the plaintiff and her driver use the highest degree of care, to the end that its property and its servants might not be injured by a failure to use such degree of care. Within the meaning of the law the street railway was a person in the street, and entitled to the same protection under the statute as a person or another automobile driver would have been. Had plaintiff's car, whilst being run in violation of this statute (that is being run without the exercise of the highest degree of care), struck and injured the street car, there can be no doubt under paragraph 9 of sec. 12, act of 1911, plaintiff would be liable in damages. The statute makes liability for damage to person or property. Not only so, but had the conductor or motorman on the street car been injured, then there would be no doubt of their right of action against plaintiff. This but demonstrates the fact that as to the street car and its occupants the plaintiff and her driver, in approaching them owed them the duty of exercising the highest degree of care, and the failure to exercise such degree of care would be negligence. It would be a singular doctrine to hold that as to others, the drivers must use the highest degree of care, but that they cannot be held to be guilty of contributory negligence if they fail to exercise such care.

As said before, this statute prescribes a rule of conduct. If a violation of the statute occasions injury to others, the person violating it is liable in damages. If on the other hand the violation of the statute occasions injury to the person violating it, such person cannot recover for injury to himself, which injury was contributed to by his own wrongful violation of law. His failure to use the highest degree of care is contributory negligence. The amendments to the instructions were proper. They but presented the idea of contributory negligence. They fixed the standard of duty as fixed by the law. The rule of the Kansas City Court of Appeals, in the cases cited is wrong.

The foregoing covers all the assignments of error made by appellants. Neither assignment being good, it follows that the judgment should be affirmed.

It is so ordered. *Blair, P. J.,* and *Bond, J.,* concur; *Woodson, J.,* absent.