BERNARDINA GUDE v. WEICK BROS. UNDERTAKING COMPANY, Appellant.—16 S. W. (2d) 59.

Division Two, April 5, 1929.

*Brackman, Hausner & Versen* for appellant.

*Jesse T. Friday* for respondent.

BLAIR, P. J.—Action for damages for the death of plaintiff's husband Bernard Gude, by alleged wrongful act of defendant. Trial by jury resulted in a verdict for plaintiff in the sum of $10,000. Failing to obtain a new trial, defendant was granted an appeal to this court.

A brief sketch of the evidence will suffice, because its sufficiency to sustain the judgment is not now challenged by defendant (ap-

pellant in this court). Respondent's husband was struck and fatally injured by appellant's automobile ambulance, driven by its employee in pursuance of appellant's business, at Broadway and Dakota streets in St. Louis, on February 2, 1925, between the hours of 5:30 and six o'clock, P. M. Appellant's automobile was moving southward on Broadway, and deceased was on the south side of Dakota Street walking eastward across Broadway, when the fatal accident occurred.

Respondent's evidence tended to prove that the automobile was being driven at a speed of twenty-five to thirty miles per hour along the middle of Broadway, without any warning of any sort; that deceased stepped down from the west curb of Broadway and moved directly and in a steady course across the street in full view of the driver of the automobile, and that the driver did not change the course or check the speed of the automobile and struck the deceased with the left front portion of the automobile when deceased was midway between the rails of the east (northbound) street car track in Broadway; that blood was found on the left front fender of the automobile after the collision. There was also evidence which tended to prove that the driver could have stopped or checked the automobile in time to have avoided injuring deceased after his peril was or could reasonably have been known by said driver.

Appellant's evidence tended to prove that the automobile was being driven southward on Broadway at a speed of twenty to twenty-three miles per hour, and that the wheels were between the west (southbound) street car tracks and the west curb of Broadway; that the horn was duly sounded at and approaching said street intersection; that the driver saw deceased about five feet from the west curb of Broadway; that deceased started to go west toward the curb after the driver sounded the horn; that deceased then suddenly turned back and started to run eastward across the street into the path of the automobile; that the driver twisted the steering wheel quickly and turned his automobile in a southeast direction toward the street car tracks to avoid striking deceased, but that deceased ran into the right side of the automobile and was thus struck and knocked down.

The automobile ambulance was quickly stopped, and deceased was picked up and put into it and taken to a hospital where his death, concededly caused by the injuries thus received, occurred the following day.

The petition charged that the driver was negligent in driving the automobile at a high and dangerous rate of speed and without having it under such control that it could readily be stopped at the first appearance of danger and that no warning of its approach to Dakota Street was given. Appellant was also charged with negli-

gence under the humanitarian rule. The answer was a general denial, a plea of contributory negligence on the part of deceased and that deceased's injuries were caused solely by his own negligence. The reply was a general denial.

The case was submitted to the jury on the charges of high and dangerous speed, on the failure to give proper warning and upon appellant's alleged negligence under the humanitarian rule, and also upon deceased's alleged contributory negligence, as a defense to appellant's alleged primary negligence. No complaint is here made of the trial court's action in submitting the case on said charges of negligence and none of the instructions are challenged as to form or substance, except Instruction 3 on the humanitarian rule, which authorized the jury to find for respondent, if it found (among other things) "that defendant's agent and servant saw, or by the exercise of the highest degree of care could have seen, said Bernard Gude in and upon the traveled part of said Broadway and in a position of imminent peril of being struck by said automobile, if you find that said Bernard Gude was in a position of imminent peril of being struck by said automobile, and that defendant's said agent and servant, in time thereafter, by the exercise of the highest degree of care on his part, and with the means at hand and with reasonable safety to himself and the other person upon said automobile, could have stopped, slackened the speed of or turned said automobile so as to have avoided striking said Bernard Gude, and that defendant's said agent and servant failed to do so."

This portion of Instruction 3 is said to be erroneous because "it imposed a higher degree of care on the defendant to avoid injuring plaintiff's husband than the law required under the humanitarian doctrine, the theory which was attempted to be submitted by said instruction," and because "it violated the statute law of the State in asserting that the defendant was only required to exercise 'reasonable' care for the safety of himself and his passengers."

I. Appellant does not claim that, in so far as the issue of its primary negligence is concerned, its driver was not required to exercise the highest degree of care in the operation of his automobile upon the highway. The question is whether appellant's driver, in attempting to avoid inflicting injury upon the deceased while he was in a position of imminent peril, not caused by said driver's negligence, was required to exercise the highest degree of care.

By Section 19, page 91, Laws of 1921, First Extra Session, it is provided that "every person operating a motor vehicle on the highways of this State shall drive the same in a careful and prudent

manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the property of another or the life or limb of any person.'' It is manifest that the statute itself does not prescribe any different degree of care on the part of the operator for different occasions and places or under different circumstances. It is made the duty of every person operating a motor vehicle to exercise the highest degree of care. Where? Everywhere on the highways. When? At all times, because no exceptions are authorized. The words ''so as not to endanger the property of another or the life or limb of any person'' immediately follow the words ''at a rate of speed,'' but they should likewise be held to apply to the words ''shall exercise the highest degree of care,'' because the purpose of such requirement is to avoid such injury or death. The operator of a motor vehicle must exercise the, highest degree of care so as not to injure any person, whether such person is in the exercise of due care on his own part or not. Such operator must exercise the highest degree of care to stop his motor vehicle or to slow it down or to turn it aside, when to do so will avoid injuring one brought into imminent peril of injury without prior fault of such operator.

This court has never passed on this question where it was squarely in issue. In 45 Corpus Juris, 992, section 544, it is said that ''in the absence of a statute requiring a higher degree of care, ordinary care to avoid the injury is all that is required of defendant upon becoming aware of appellant's position of peril,'' and in the note thereto, reference is made to statutory provisions in the various jurisdictions. Section 19, page 91, Laws of 1921, First Extra Session, is such a statute, as it appears to fill all the requirements of the exception to the general rule thus laid down in Corpus Juris.

Respondent cites Hults v. Miller (Mo. App.), 299 S. W. 85. At pages 88, it is said:

''The defendant further contends that the court committed error in giving plaintiff's Instruction No. 5, on the ground that it submits the humanitarian rule, on the theory that the statute (Sec. 19, p. 91, First Extra Session, Laws 1921)' requiring the exercise of the highest degree of care on the part of the driver of the automobile is applicable under that rule. Defendant contends that the statute is applicable only to primary negligence and has no application to negligence involved in the violation of the humanitarian rule. This contention is untenable for two reason. First. Our Supreme Court has held that the present statute (Sec. 19, p. 91, First Extra Session, Laws 1921), as well as a very similar previous statute, prescribes a rule of conduct, and applies to negligence involved under the humanitarian rule as well as to primary negligence. [Burke v. Pappas (Mo. Sup.), 293 S. W. 142, 1. c. 147; State ex rel. Dowell v. Allen (Mo. Sup.), 250 S. W. 580, 1. c. 585; Threadgill v. United Railways Co., 279 Mo. 466, 214

S. W. 161; Monroe v. Chicago & Alton R. Co., 297 Mo. 633, 249 S. W. 644, 257 S. W. 469.]"

What Division One of this court said in Burke v. Pappas, 293 S. W. 142, l. c. 147, indicating that the operator of a motor vehicle was under the statutory duty of exercising the highest degree of care, when such operator's duty is measured under the humanitarian rule, was clearly *obiter*, in so far as the issues there raised were concerned, but was nevertheless correct as an abstract proposition of law.

In State ex rel. Dowell v. Allen (Mo. Sup.), 250 S. W. 580, the question was whether or not the St. Louis Court of Appeals had contravened certain decisions of this court in ruling that Instructions 1 and 2 were not in such conflict with Instruction 3 as to constitute reversible error. Instruction 2 told the jury that it was the duty of defendant in driving his automobile to exercise ordinary care not to injure plaintiff after he discovered plaintiff in a position of imminent peril. Instruction 3 was an abstract statement of the law to the effect that it was defendant's duty to exercise the highest degree of care in operating his automobile upon the public highway. Referring to Paragraph 9, Section 12, Laws 1911, page 330, which imposed upon the operator of a motor vehicle upon the public highway the same degree of care required by our present statute enacted in 1921, LINDSAY, C., said:

"This standard established by the statute, and as thus construed in the cases cited, is stated in Instruction III. The full strictness of this rule or standard was not imposed upon defendant by the terms used in Instruction I for plaintiff. The rule was not applied in its full strictness in Instruction II upon the humanitarian doctrine. These two instructions were designed to cover the whole case under the two respective theories of primary negligence and the humanitarian rule, and were the instructions authorizing a verdict for plaintiff. To the extent that they relaxed any of the strictness of the statutory requirement they were favorable to the defendant.

"The Act of 1911 can mean no less than that the rule of conduct therein prescribed must apply to the driver of the motor vehicle at the time as well as immediately before a collision occurs with a person traveling upon or across a public street much used for travel. [Mahany v. K. C. Rys. Co., 286 Mo. l. c. 612, 228 S. W. 821.] Consideration of the rule announced in Instruction III did not tend to impose a higher duty upon defendant than the law required of him under the circumstances disclosed."

Threadgill v. United Railways Co., 279 Mo. 466, 214 S. W. 161, cited in Hults v. Miller, supra, and relied upon by respondent, applied the rule of the highest degree of care to the operator of a motor vehicle in determining whether his own negligence contributed to his

injury in a collision with a street car. Whether such highest degree of care was required in measuring such operator's negligence under the humanitarian rule was not under consideration, but if an injured automobile driver is guilty of contributory negligence, if he fails to exercise the highest degree of. care for his own safety, it would seem equally clear that he should be held to the same degree of care under the humanitarian rule. To the same general effect is Monroe v. Chicago & Alton Railroad Co., 297 Mo. 633, 1. c. 653, Par. VII, 249 S. W. 644.

In Bruce v. Packing Co. (Mo. App.), 6 S. W. (2d) 986, BENNICK, C., said:

"The second insistence of defendants is that plaintiff's given Instruction No. 1, hypothesizing a recovery for negligence under the humanitarian doctrine, was erroneous, in that it placed upon defendants the duty of exercising the highest degree of care in the operation of the automobile. While the propriety of the instruction in the form given may have been an open question at the time of the trial of the case, it has since been expressly held that the statutory injunction as to the exercise of the highest degree of care applies, not only to primary negligence, but also with equal force to negligence under the humanitarian doctrine, in view of which there is now no occasion for any controversy as to the correctness of this feature of the instruction. [Burke v. Pappas (Mo. Sup.), 293 S. W. 142; Hults v. Miller (Mo. App.), 299 S. W. 85.]"

Thus it appears that the St. Louis Court of Appeals has ruled this question squarely against the contention of the appellant. This court has said, in cases where the question was not squarely involved, that, in determining whether the operator of a motor vehicle on the public highway is guilty of negligence under the humanitarian rule, such operator must be held to the exercise of the highest degree of care. We think this is the sound rule and should be announced in this case where such question is squarely before the court.

In the able brief of respondent's counsel, the cases, cited and relied upon by appellant in support of its contention for a ruling contrary to the foregoing conclusion, are so well and clearly distinguished that we can do no better than to quote, with our full approval, that portion of respondent's brief to-wit:

"The cases of State ex rel. v. Trimble, 253 S. W. 1014, 1. c. 1018; Degonia v. Railroad, 224 Mo. 564; Hanlon v. Mo. Pac. Ry. Co., 104 Mo. 381, 1. c. 389; O'Flaherty v. Union Ry. Co., 45 Mo. 70; Hawkins v. Wells, 297 S. W. 193, 1. c. 196; Lambert v. Wells, 264 S. W. 37; Sullivan v. Gideon & N. O. R. Co., 247 S. W. 1010, cited by appellant, which it claims supports its contention that said Instruction No. 3 is erroneous because it imposes upon defendant's chauffeur operating defendant's said automobile the duty to exercise the highest de-

gree of care in the operation of said automobile, instead of ordinary care, are wholly inapplicable to the case at bar, for the reason that the injuries which gave rise to the actions in said cited cases, which were all railroad cases, were occasioned through the alleged negligence of the crew of the railroad companies causing the injuries, and the degree of care required to be used in the operation of railroad trains and street cars was only the common-law duty to exercise ordinary care, and not the statutory duty to exercise the *highest degree of care* imposed on motorists by Laws 1921 (1st Extra Session), page 91, Section 19, as was required at the time respondent's husband in the instant case was struck and killed by defendant's automobile ambulance.

"The case of Banks v. Morris & Co., 257 S. W. 482, cited by appellant, is also inapplicable to the case at bar, for, although said case is an automobile case, it will be readily seen upon a perusal of said Banks case, that the injuries sustained by plaintiff in that case were sustained on January 3, 1920, more than a year prior to the enactment of Laws 1921 (1st Ex. Sess.), page 91, Section 19, requiring motorists to exercise the highest degree of care in the operation of motor vehicles.''

II.   There is no merit in appellant's second criticism of Instruction 3, that it only required appellant's driver to exercise reasonable care for his own safety and that of his passenger, while it required the exercise of the highest degree of care not to injure respondent's husband.   It is true, that in Threadgill v. United Railways Co., supra, it was held that the operator of a motor vehicle was required to exercise the highest degree of care for his own safety, but Instruction 3 did not conflict with that rule.   It did not refer to the degree of care appellant's driver was required to exercise for his own safety. The word "reasonable" modified the word "safety" and had no reference to *the degree of care* required to be exercised by said driver for his own safety.   The instruction properly told the jury that said driver was required to exercise the highest degree of care, consistent with the reasonable safety of himself and his companion, not to injure respondent's husband, after he discovered him in a position of imminent peril.   The assignment is overruled.

III.   The only remaining assignment of error urged in this court is that the verdict of the jury, assessing respondent's damages at the sum of $10,000, is excessive.   Deceased was fifty-three years old when he was killed.   Respondent was then fifty-four years old.   It was shown that her life expectancy was 18.09 years at the time of her husband's death and that deceased's

expectancy was greater. Both were shown to have been in good health at the time he received his fatal injuries. Deceased had been earning $24.30 per week as a private watchman. Respondent testified that he brought his earnings to her and that she used it "about half for myself and the rest of it ——," apparently meaning that she used it for her support and his support about half and half.

At $24.30 per week, had he lived and been continuously employed, respondent's husband would have earned over $22,858 during respondent's expectancy of 18.09 years. Respondent's half of such earnings, without regard to any other pecuniary loss she may have sustained, exceeded the damages assessed by the jury. Hence, we cannot say that the amount the jury allowed was excessive. We find it unnecessary to examine the cases cited by counsel.

There being no error in the record, the judgment is affirmed. All concur.