Tom Roark, Respondent, v. J. L. Stone et al., Appellants.—30 S. W. (2d) 647.

Springfield Court of Appeals.   July 29, 1930.

*Leo H. Johnson* for appellant.

*James Tatum* and *Ruark & Ruark* for respondent.

556

BAILEY, J.—Plaintiff brought suit to recover damages for personal injuries alleged to have been sustained by him in a collision between a truck which he was driving and a roadster being driven at the time by defendant John Stone, a minor son of defendant J. L. Stone. The petition sets forth that John Stone was living with and being educated and supported by his father J. L. Stone; that defendants live some five miles west of Neosho, Missouri; that the said J. L. Stone was sending his said minor son to the Neosho Public schools and for that purpose had provided said minor with an automobile to run and operate to and from school each morning and evening.

It is further alleged that on February 21, 1928, the plaintiff was driving a truck loaded with cattle at or near the intersection of Highway 71 and the Neosho-Seneca public road, where it was struck by a car being driven by John Stone, who was at the time traveling from his home to Neosho to attend school; that, "At said time the plaintiff was traveling in a northwestern direction, at a place where there was a curve in such highway and the said defendant approached the plaintiff upon said highway from the northwest, running his car upon the wrong or left hand side of such highway and at a high and dangerous rate of speed, to-wit, a speed of about fifty miles an hour and carelessly and negligently ran his said car with great force and violence upon and against plaintiff's car without sounding the horn on his car or giving to plaintiff any notice of his approach."

It is further alleged that plaintiff was severely and permanently injured as a result of said defendant's negligence, particularly, in that his knee cap was broken, for all of which injuries plaintiff prayed damages in the sum of $5000.

The answer of defendant John Stone denied he was being supported by his father, J. L. Stone, or that his father was sending him to school, but alleged that defendant was making his own way and schooling himself. It is further alleged the accident was the result of plaintiff's own reckless and negligent driving of the truck.

The separate answer of defendant J. L. Stone pleaded the oral emancipation of his son John, and denied that the said son was being sent to school by him in February, 1928, and further alleged he had no knowledge that his son had, "taken the car and left for school until after he had gone." The trial was to a jury and resulted in a verdict for plaintiff against both defendants in the sum of $500. Defendants have appealed.

Defendants urge that the demurrer to the evidence offered by John Stone at the close of the whole case should have been sustained. Considering the facts from the standpoint of plaintiff's evidence, as we are bound to do, there can be no question the demurrer was properly overruled. Such facts, in brief, tended to prove that Young Stone was driving the car in question at an excessive rate of speed (40 to 50 miles per hour), around a curve at the intersection of two state highways, just outside Neosho, Missouri; that he was driving on the wrong side of a much travelled road; that he ran the automobile, which he was operating, against plaintiff's loaded truck, being driven by him on the right side of said highway at a very slow rate of speed, with such violence as to push it backward some eighteen feet. Plaintiff's evidence further tended to show he was in the exercise of the highest degree of care at the time and we are bound by his testimony, although it was in direct conflict with that of defendant John Stone.

The principal question raised in this case is in regard to the liability of defendant J. L. Stone, the father of the minor John Stone who was operating his father's car at the time of the accident. Defendant pleaded and attempted to establish the fact that the son John, had, by oral agreement between father and son, become emancipated at the age of thirteen. The evidence on this phase of the case, together with a refused offer of proof, was sufficient, we think, to make a question for the jury on the issue of emancipation. It is unnecessary to consider that question, however, if the theory upon which plaintiff's case was tried be correct. The petition charged that defendant John Stone was a minor under sixteen years of age at the time of the accident and that defendant J. L. Stone had provided him with an automobile to run and operate from his home to and from school. The testimony of defendant J. L. Stone as to the boy driving the car was as follows: "Had I provided the way for the boy to go to school and back? Well, I had the car and of course there was no other way for him to go to school, so he took the car. He had been doing that one term and a half before the accident. The title certificate to the car is in my name. He kept the car in town, then came home in it to help me. I bought the car for the family. It was bought before the boy started to high school."

Under the laws of this State it is unlawful for any person under the age of sixteen years to operate a motor vehicle on the righ-

ways. [Laws 1921, Extra Session, sec. 27, p. 104.] It is plaintiff's contention that a person who intrusts a motor vehicle to the hands of an incompetent driver or to a person deemed incompetent under the law on account of lack of age, is liable for injuries resulting from such driver's negligence. The particular point has apparently never been passed upon by the courts of this State. It has been held in other jurisdictions that an owner, who lends an automobile to a person forbidden by statute to operate same on the public highways, is liable for the negligence of the borrower in the operation of the automobile. [36 A. L. R., p. 1152, note par. c.] In 42 C. J. 1078, article 836, it is said: "The owner of a motor vehicle may be held liable for a resulting injury upon the ground of negligence where he entrusts the operation of his vehicle to an inexperienced or incompetent driver with knowledge of such incompetency." The case of Walker v. Klopp, 99 Neb. 794, 157 N. W. 962, L. R. A. 1916E, p. 1292, is one in which was considered the effect of a statute, making unlawful the operating of an automobile on a public highway by any person under the age of sixteen, upon the liability of a father for the negligent act of his minor son. The Nebraska Supreme Court held that, "The clear and unmistakable purpose of the Legislature in enacting the Nebraska statute under consideration was to protect persons and property from the injury and damage that experience had shown were more likely to be occasioned by the driving of motor vehicles on the public highways by minors under sixteen years of age, than would be occasioned by the driving of motor vehicles by older persons of more mature judgment; and when a person wilfully permits his minor child, under the age of sixteen years, to drive his automobile upon the public highways, in direct violation of this statute, such permission and such violation of the statute, constitute in him such negligence as is, by the direct sequence of events, the proximate cause of any damage that may be sustained by another to his person or property by the driving of such automobile by such minor, when the other elements of actionable negligence are established." [l. c. 1295, L. R. A. 1916E.]

Similarly in Laubach v. Colby, 129 Atl. 88, (Penn. 1925), it is held that, "When the owner permits his car to be used in violation of the statute, as was here done, his liability attaches for the injury resulting from its negligent management, irrespective of whether the party was at the time engaged on his personal business; and for all the natural and probable results of his wrongful act he must respond in damages. We are of the opinion that the defendant here is responsible for the injury resulting from the negligent acts of his son under sixteen years of age, who was given leave by him to operate the automobile which he owned." [l. c. 89.]

To the same effect are the following decisions: Burrell v. Horchern (Kan.), 232 Pac. 1042; Taylor v. Stewart (N. C.), 90 S. E. 134;

Schultz v. Morrison, 91 Miss. 248, 154 N. Y. Supp. 257; Rush v. McDonald (Ala.), 106 So. 175; Taylor v. Stewart, 172 N. C. 203, 90 S. E. 134.

In fact, this theory of the law seems to be generally accepted where the question has arisen. It is true that in this State the mere ownership of a car, by a father, for the pleasure of his family, does not render him liable in damages to a third person for injuries caused by the negligence of his minor son while operating such automobile on a public highway. [Hays v. Hogan, 273 Mo. 1, 200 S. W. 286.]

But the question here involved is entirely different. If the statute prohibiting the use of a motor vehicle by a minor under sixteen years of age is to have any effect whatever, the father who knowingly permits such violation of the law and whose negligence in so doing makes it possible for the child to cause an injury, must be held liable on account of such negligent act. The trial court, by its instructions and rulings in this case, adopted plaintiff's theory and in so doing was, we think, clearly within well-recognized principles of law. It follows that the question of emancipation of John Stone was properly ruled out of the case.

The circuit court gave four instructions on behalf of plaintiff. In three of these instructions the jury was informed that if plaintiff was driving his car on the right hand side of the road with *a high degree of care* and defendant John Stone was guilty of certain acts of negligence (therein set out) causing the collision, the verdict should be for plaintiff. In the fourth instruction the duty of exercising the "highest degree of care," was made incumbent upon plaintiff. Defendant complains of these instructions because the first three required plaintiff to exercise only, "a high degree of care." Defendants, in their answer, failed to state that it was plaintiff's duty to exercise the highest degree of care. One of defendants' given instructions, however, placed upon plaintiff the duty of exercising the highest degree. But by defendant's Instruction 2, in which the humanitarian theory was submitted, plaintiff was required to exercise only ordinary care. It is well settled, of course, that instructions must be consistent. It is also true that, under our statute, the operator of a motor vehicle is required to exercise the highest degree of care so as not to endanger the life or property of any person on the highway. [Gude v. Weick Co., 16 S. W. (2d) 59.]

It is also admitted that this statute has been construed to mean that the operator of a motor vehicle must exercise the highest degree of care for his own safety. [Threadgill v. Railway Co., 279 Mo. 466, 214 S. W. 161.]

But in the case at bar we believe the instructions as a whole were not misleading. It may be granted that the instructions placing upon plaintiff the duty to exercise a, "high degree of care" are not

in compliance with the statute and are, more or less, inconsistent with other instructions requiring him to exercise the highest degree of care. But defendants are in no position to complain on that account. By their instruction No. 11, as heretofore stated, plaintiff was required to exercise only ordinary care. It is true that this instruction dealt merely with the humanitarian or last chance doctrine. However, the duty to exercise the highest degree of care is equally applicable to cases involving the humanitarian doctrine and those involving primary negligence. [Gude v. Weick Bros. Undertaking Co., 16 S. W. (2d) 59.]

Hence there can be no distinction on that account and defendants have no cause to complain of plaintiff's instructions which were, we think, more favorable to defendants than their own instruction. [Flannagan v. Railroad, 297 S. W. 463.]

Some point is made because plaintiff had not obtained a state certificate of title to his truck at the time of the accident. We are unable to perceive and defendants fail to indicate in what manner such fact, if it be a fact, could change defendants' liability in this case under the issues made by the pleadings. Other alleged errors are not of sufficient importance to materially affect the issues and need not be further considered. The judgment should be affirmed. It is so ordered. *Cox, P. J.,* and *Smith, J.,* concur.