ETTA PERKINS v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.—49 S. W. (2d) 103.

Division One, April 2, 1932.

*Cyrus Crane, Hugh E. Martin* and *P. H. Graves* for appellant.

*Horace Ruark, E. B. Morgan* and *Leo H. Johnson* for respondent.

ATWOOD, J.—Respondent is the sole surviving parent of Russell Perkins who was an unmarried minor between twenty and twenty-one years old when killed in a collision with one of appellant's trains while he was driving an automobile south on U. S. Highway 71 at the crossing of the highway and appellant's main track at Tipton Ford, Missouri. This is an action for damages on account of his death. The jury returned a verdict for defendant. Plaintiff's motion for a new trial was sustained on the ground of error in certain instructions given at defendant's request. Defendant thereupon appealed from the court's order and judgment.

Plaintiff alleged in her petition that as her son approached the railroad crossing from the north he was prevented from obtaining a view of defendant's main track southeast of the crossing by trees, a loading shed, a garage, a filling station and certain bunk or work cars along the north side of defendant's right of way; that the electric bell and wig-wag signal maintained by defendant at the crossing to warn travelers on the highway of approaching trains was silent and motionless, though her son was unaware that it was in a defective condition; that the crossing in the highway maintained by defendant where two of its tracks immediately north of its main track passed over the highway was rough and "full of ruts or holes from four to five or six inches in depth below the level of the rails;" that with a knowledge of all these circumstances and conditions defendant, while plaintiff's son was approaching said crossing in a careful and prudent manner, ran its train over said public business crossing "in a careless and negligent manner, i. e. without maintaining a look-out ahead for persons which they knew, or should have known, would or might be upon such crossing at such time and place, and by running said train at an excessive, reckless and dangerous rate of speed to-wit: a speed of sixty (60) miles per hour, and by not constantly ringing the bell on the locomotive drawing such train

for at least a quarter of a mile before reaching said crossing, and by not sounding the steam whistle upon said locomotive at intervals for a distance of a quarter of a mile before reaching said crossing." Plaintiff further pleaded negligence under the humanitarian rule, and alleged that "by reason of the combined acts of negligence of the defendant as aforesaid, her said minor son was struck and killed." The only grounds of negligence covered by instructions given on request of plaintiff were, failure to ring the bell and sound the whistle under the circumstances and conditions in evidence, and defendant's operation of its train "at a high, dangerous and excessive rate of speed, towards and across the public highway mentioned in evidence, under the facts and circumstances detailed in evidence."

Defendant's answer was a general denial, a general allegation that the said Russell Perkins' death was directly occasioned by his own carelessness and negligence, followed by fifteen specifications thereof, and a plea that plaintiff's petition contained two causes of action which should be separately stated.

The evidence showed that Highway 71 ran south through Joplin, Tipton Ford and Neosho, and was a much traveled public road. Russell Perkins was a traveling salesman and on the morning of this accident was driving from Joplin to Neosho, as he had been doing at regular intervals for the previous six months. He left Joplin about nine-thirty and was killed shortly after ten o'clock. Defendant's tracks ran in a somewhat southeasterly and northwesterly direction through the small community of Tipton Ford, and for some distance before turning south and crossing defendant's tracks Highway 71 ran practically parallel with defendant's right of way. For a short distance before making this curve to the south the highway bore away from defendant's right of way leaving a triangular piece of ground between the railroad right of way and the highway along the north side of which, adjoining the highway, were a half dozen or more shade trees thirty to fifty feet apart. The apex of the curve where the highway turned south was about 180 feet north of the railroad crossing. Slightly south of this curve and on the east side of the highway was a square front building used as a restaurant and garage with a gasoline pump in front. A dwelling house stood back from the highway slightly north and east of this building. Defendant's north or house track was forty-four feet south of this garage. Across the highway to the west was a storage building about nine feet north of defendant's house track, and immediately west of this building was a berry packing shed. The railroad track that a traveler on the highway coming from the north would first encounter was defendant's business or house track. On the morning of the accident two work cars were located just west of the highway on the house track, and immediately east of the highway on the same track were five more work cars extending east for a distance of about 200 feet.

There was a stack of cross ties in the vicinity, and further east on the same side of the right of way were two spreading shade trees and two bunk cars. Just south of the house track was the passing track, and south of this was the main track upon which Perkins was struck. The highway was paved to a width of eighteen feet with concrete except that part between the north rail of the house track and the south rail of the main track where the highway consisted of boards and chats which presented a "tolerably rough" surface. About fourteen feet south of the main track and on the east side of the highway was an electrically operated bell and wig-wag signal voluntarily maintained by defendant to warn travelers on the highway of approaching trains. On the morning of the accident defendant's signal inspector was repairing the wires connecting this signal with the main track. He testified that on his last inspection the week before he noticed that the insulation on the connecting wires was bad though he said the signal was then working. There was testimony, however, that the signal was not working on the morning of the accident and had not been working for several days previous. A short distance south of the signal post and on the same side of the highway was a store, and opposite this building on the west side of the highway were a garage and filling station. Both north and south of the tracks were large railroad crossing warning signs. Surveyor Thain, produced as a witness by plaintiff, said that a person standing about the crossing on the south side of the track might see a train approaching on the main track from the southeast approximately at the cattle guards, which spot he located as 2230 feet, or nearly a half mile, east of the crossing. He also testified that the distance along the highway from the north rail of the house track to the north rail of the main track was thirty feet and three inches, and his figures indicate that the distance between the north rail of the main track and the south rail of the house track was approximately twenty-five feet. The only testimony as to visibility of the main track east of the crossing from a point on the highway immediately south of the house track was that of defendant's civil engineer who said that at a point twenty-five feet north of the center of the main track, which would be seven feet south of the center of the business or house track, one had an unobstructed view down the main track for more than a half mile.

Without conceding error in the giving of any instructions requested by defendant counsel for appellant insist that defendant's demurrer at the close of all the evidence should have been given. They present seven points under this head, six of which are directed to the proposition that Perkins' death was caused by his own carelessness and negligence, and the seventh is to the effect that there was no negligence proven upon the part of defendant which warranted the submission on failure to warn by whistle or bell and on

excessive speed of the train. In passing on defendant's demurrer to the evidence we must treat the evidence most favorable to plaintiff as true and give her the benefit of all reasonable inferences to be drawn therefrom. We shall consider appellant's seventh point first.

Section 4756, Revised Statutes 1929, in effect on the date of this accident, provides that a bell shall be rung on each locomotive engine "at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street, or a steam whistle shall be attached to such engine and be sounded at least eighty rods from the place where the railroad shall cross any such road or street, except in cities, and be sounded at intervals until it shall have crossed such road or street . . . and said corporation shall also be liable for all damages which any person may hereafter sustain at such crossing when such bell shall not be rung or such whistle sounded as required by this section: *Provided, however,* that nothing herein contained shall preclude the corporation sued from showing that the failure to ring such bell or sound such whistle was not the cause of such injury." Witness Jones, who had been filling a gasoline tank at the rear of the store just south of the main track and east of the highway and had driven his truck to the sidewalk crossing between the store and the main track as the train was approaching, testified that he heard the train whistle nine times, the first signal being given "down in the timber," and after he heard those nine whistles "the train did not whistle again until after Perkins was killed. The nose of the engine was right around the curve at the last whistle. It was east of the cattle guard there. I couldn't give the exact distance because I had never been down there to measure, but it was just east of the cattle guard as it came around the curve." We have already alluded to evidence fixing the location of the cattle guards as nearly a half mile east of the crossing. Witness Byers, who according to the evidence passed over the crossing about thirty feet ahead of Perkins, testified that although he shut off the ignition, threw out the clutch and coasted his automobile across, he "didn't hear the whistle of the train or the ringing of the bell." There was other testimony to the same effect. In Toeneboehn v. Railway Company, 317 Mo. 1096, 1111, 298 S. W. 795, we held on similar testimony that whether or not there was a sufficient ringing of the bell or blowing of the whistle was a question for the jury, and we so hold in this case.

Coming to appellant's claim that under the evidence plaintiff was guilty of contributory negligence as a matter of law, we are not favorably impressed with the first two points, namely, that the evidence conclusively shows that plaintiff was driving at a speed of twenty-five or thirty miles an hour, or at a rate of speed that did not readily permit him to stop. While witness Arrowood, who was working on a gasoline pump just east of the highway and near the

curve north of the crossing, estimated the speed of Perkins' car as it came around the curve and proceeded toward the crossing at "around thirty miles per hour," he also said that Perkins cut off the gas and disengaged the clutch of his car as he came around the curve and did not start the engine again until he got to the north rail of the north track. Witness Jones said that the cars driven by Byers and Perkins were "about twenty or twenty-five feet or more" apart when they came around the curve and "these cars kept about the same distance between them." Byers testified that as he came around the curve his car was traveling "about twenty miles per hour, and when I got on the track I should say I was not exceeding twelve or fifteen miles an hour."

Neither do we discover any merit in appellant's third point that as a matter of law "Perkins was negligent in failing to hear the signals of warning given by bell and whistle and by the shouts of the signalman on the crossing, or in failing to heed them, if they were heard by him." We have just ruled that whether or not sufficient bell or whistle signals were given was a question for the jury, and the signalman himself testified that he did not shout and only gave the "washout" signal consisting of a movement of his hands and arms.

The only matters left for us to consider under this head are appellant's fourth, fifth and sixth points to the effect that the failure of the crossing device did not excuse Perkins from exercising the highest degree of care required of him under the Motor Vehicles Act, Laws 1921, First Extra Session, page 91, and from attentively looking and listening for a train and being prepared to meet one at the crossing, and from failing to see or heed the warning given him by the signalman. The undisputed evidence does show that after one driving on the highway from the north had passed the bunk cars on the north or house track he would have an unobstructed view of the main track for nearly a half mile east of the crossing, and if Perkins then looked east he must have seen defendant's train not more than a hundred feet east of the crossing speeding westward at the rate of forty or forty-five miles an hour, while he was still twenty or twenty-five feet north of the north rail of the main line crossing. While plaintiff did not submit existence of the obstructions, the rough crossing, the defective signal and the sudden appearance of the signalman at the crossing as specifications of defendant's negligence, yet they were pleaded and proved as facts and circumstances attending the collision and as such were proper matters for consideration of the jury in connection with defendant's specifications of plaintiff's alleged contributory negligence. [20 R. C. L. sec. 100, p. 115.] Counsel for appellant contend that both plaintiff and defendant having tried and submitted this cause on the theory that Perkins was re-

quired to exercise the highest degree of care in the operation of his automobile on the public highway, his conduct is to be measured by that standard, and failing to observe the approaching train or heed the signalman's warning, even in the light of the circumstances we have just mentioned, he must as a matter of law be deemed to have not been in the exercise of the highest degree of care. This degree of care is such as a very careful person would use under the same or similar circumstances (Threadgill v. United Rys., 279 Mo. 466, 477, 214 S. W. 161; 45 C. J. p. 705), but obviously it is not such care as would under any and all circumstances prevent injury. [Monroe v. Railroad, 280 Mo. 483, 494, 219 S. W. 68.] It was Perkins' duty in approaching the crossing to lend an attentive eye and ear to the bell and wig-wag signal that defendant had placed there to warn travelers on the highway of passing trains. [Edwards v. Ry. Co., 94 Mo. App. 36, 67 S. W. 950.] In Bachman v. Railroad, 310 Mo. 48, 62 and 70, 274 S. W. 764, we said: "Where a railroad installs a signal bell, it might well be ruled that a traveler could rely upon the device that was installed for his safety." True, in the Bachman case, failure to maintain the signal in working condition was submitted as a ground of negligence and such was not done in this case. But even in the instant case Perkins was entitled to rely somewhat upon the impression of safety suggested by this silent and motionless device, and the absence of signals by whistle or bell if none were given. He also had a right to give and must of necessity have given some attention to getting over the rough places on the crossing. [Doyle v. Railroad (Mo. App.), 185 S. W. 1175, 1178.] As for the signalman's attempt to warn, the evidence is not conclusive that it was seasonably made. He testified that he stood in the highway just south of the main track and waved his arms at Perkins but did not yell or call out to him; that the car that preceded Perkins "was far enough ahead of him that there would be no danger to it from the train." He did not indicate how near the train was when he reached the highway but said he believed he "could have gone across the main track and probably across the passing track." However, Byers in his written statement given to defendant's claim agent just a few days after the accident said: "Just as I crossed the tracks a signalman as I understand he was, was walking toward the crossing. He was possibly twenty feet or so from it when I saw him and right after the accident I saw this signalman and an oil truck driver running after the train which had stopped down the track." Byers passed over the crossing only about thirty feet ahead of Perkins, so it would appear that the signalman's effort to warn Perkins was too late to be effective. Considering all the facts and circumstances in evidence we think it was clearly a question for the jury to determine whether or not Perkins was guilty of contributory negligence in any of the respects urged by appellant as causing his death.

We now come to a consideration of defendant's instructions 7, 9, 10, 12 and 15, deemed by the trial court to have been erroneously given. Instruction numbered 7 is as follows:

"The court instructs the jury that it is negligence to blindly drive an automobile from behind known obstructions upon a railroad track, and if you find and believe from the evidence that the view of Russell Perkins along the track in the direction from which the train was coming was obstructed, and if you further find that the said Perkins did not look along the track after he passed the obstruction, if any, but drove directly, if so, from behind the obstructions, if any, upon the track where the collision occurred without looking down the track at a place where he could see down that track, if so, and if you find that such failure, if any, to look along the track, after he passed the obstruction, if any, caused in any degree the injuries to and death of Russell Perkins, then your verdict must be for defendant."

Respondent insists that use of the words "caused in any degree" in the above instruction, which also occurred in instructions numbered 9, 10 and 12, was error. The identical words were condemned in Bobos v. Krey Packing Co., 317 Mo. 108, 118, 296 S. W. 157, and we have generally held the use of such words as "contributed in any degree" in instructions to be erroneous for the reason that contributory negligence, to bar a plaintiff, must enter into and constitute some part of the whole negligence which is the efficient or proximate cause of the injury. [Hires v. Letts Melick Grocery Co. (Mo. Sup.), 296 S. W. 408, 411; Carr v. City of St. Joseph (Mo. Sup.), 225 S. W. 922; Monroe v. Railroad, 280 Mo. 483, 489, 219 S. W. 68; Howard v. Scarritt Est. Co., 267 Mo. 398, 401, 184 S. W. 1144; Oates v. Ry. Co., 168 Mo. 535, 548, 68 S. W. 906; Moore v. Ry. Co., 126 Mo. 265, 277, 29 S. W. 9; Roberson v. Loose-Wiles Biscuit Co. (Mo. App.), 285 S. W. 127, 130; Tri-State Fruit Growers' Assn. v. Ry. Co. (Mo. App.), 264 S. W. 445, 447; Conrad v. Hamra (Mo. App.), 253 S. W. 808, 811.] But, counsel for appellant say, there is a distinction between the words "caused" and "contributed;" that the word "cause" has been judicially defined as meaning "to effect, to produce, to bring about" (Webb v. Strobach, 143 Mo. App. 459, 465, 466, 127 S. W. 680); and that "if an instruction on contributory negligence requires the finding of negligent acts which, in the nature of things, necessarily contributed directly to cause the injury and necessarily form a part of the efficient cause thereof, then the instruction cannot be held erroneous because it does not require the jury to draw the inference which the law itself draws therefrom." This answer might be well enough if defendant had not added the words "in any degree," or if the alleged negligence of defendant had been characterized to the jury in the same way. But counsel for de-

fendant were not satisfied to submit the alleged acts of contributory negligence as having "caused," or as having been "a direct and proximate cause," as was said of defendant's alleged negligence in Instruction 1, but enlarged the field to include any cause, whether direct and proximate or indirect and remote, by use of the unqualified phrase, "caused in any degree." So, reading together as we must all instructions given, the jury were told that the negligence of defendant that would entitle plaintiff to recover must be "a direct and proximate cause" of the collision, but that the negligence of plaintiff that would entitle defendant to a verdict might be such as "caused in any degree" Perkins' injuries and death. In Salsedo v. Palmer, 278 Fed. 92, 96, the following is quoted with approval from Laidlaw v. Sage, 158 N. Y. 73, 99, 52 N. E. 679, 688, 44 L. R. A. 216:

" 'A proximate cause is one in which is involved the idea of necessity. It is one the connection between which and the effect is plain and intelligible; it is one which can be used as a term by which a proposition can be demonstrated, that is, one which can be reasoned from conclusively. A remote cause is one which is inconclusive in reasoning, because from it no certain conclusion can be legitimately drawn. In other words, a remote cause is a cause the connection between which and the effect is uncertain, vague or indeterminate.' "

In Newsome v. L. & N. R. Co., 20 Ala. App. 349, 352, it is said: "Plaintiff's act or omission, when only a remote cause or a mere antecedent occasion or condition of the injury, is not contributory negligence." No refinement of meaning can gloss over the clear impression of substantial difference in the scope of these two characterizations of cause. No such impression should have been conveyed to the jury, and such having been done by instructions 7, 9, 10 and 12 we think they were erroneous and prejudicial.

Respondent suggests other grounds of error in the five instructions for the giving of which a new trial was granted. Such errors will doubtless be avoided in a retrial of the cause, but we mention some of them.

The first clause of Instruction 7 instructs the jury "that it is negligence to blindly drive an automobile from behind known obstructions upon a railroad track," etc. The circumstances in evidence do not warrant any such supposition. After approaching these obstructions with his power off and engine silenced as much as possible, evidently for the purpose of listening intently for the electric signal or engine bell or whistle or other sound of an approaching train, Perkins turned on the gas, threw in the clutch and started past the obstructions, over the rough crossing, probably still with his eyes on the motionless wig-wag signal upon which he had a right somewhat to rely, and naturally following the automobile twenty-five or thirty feet in front of him, the driver of which the signalman does not say

he even attempted to warn, as he considered "that there would be no danger to it from the train."

Counsel for respondent also say that these instructions erroneously ignore the facts and circumstances in evidence surrounding plaintiff's alleged acts of negligence. Defendant had the right to present its own pleaded theory of plaintiff's contributory negligence and ask separate instructions on its several specifications, although we have indicated that it is better practice to submit all such facts in one instruction. [Lange v. Ry. Co., 208 Mo. 458, 478, 106 S. W. 660.] These specifications should be submitted in such a way that the jury may determine, (1) whether they be true or false, (2) whether they constitute negligence under the surrounding facts and circumstances in evidence, and (3) whether they concurred with the negligence of defendant as a direct, proximate and efficient cause or causes of the injuries and death complained of. In view of the fact that this case is to be retried it is perhaps enough to say that while defendant in submitting its specifications of contributory negligence need not burden such instructions with specific recitals of all the facts and circumstances in evidence that the jury have a right to consider in connection with this issue, yet defendant's instructions should not be so framed as to preclude the jury from considering such facts and circumstances. [Lord v. Delano et al. (Mo. Sup.), 188 S. W. 93, 95; Highfill v. City of Independence (Mo. Sup.), 189 S. W. 801, 804; Cytron. v. Transit Co., 205 Mo. 692, 719, 104 S. W. 109; Barr v. Kansas City, 105 Mo. 550, 559, 16 S. W. 483; First National Bank of Warsaw v. Currie et al., 44 Mo. 91, 92; Fine et al. v. St. Louis Public Schools et al., 39 Mo. 59, 67; Chappell v. Allen et al., 38 Mo. 213, 222; Clark v. Hammerle, 27 Mo. 55, 70; Messer v. Gentry (Mo. App.), 290 S. W. 1014, 1016; Stepham v. Railroad Co. (Mo. App.), 199 S. W. 273, 274; Boyce v. Ry. Co., 120 Mo. App. 168, 175, 96 S. W. 670.]

For the reasons above stated we affirm the order and judgment granting a new trial. All concur.