PHILIP BUCK, BY NEXT FRIEND, MARY E. BUCK, RESPONDENT, v. CHRISS C. THATCHER, APPELLANT.*

Kansas City Court of Appeals.   June 11, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 3CJ, section 866, p. 972, n. 61; Damages, 17CJ, section 408, p. 1091, n. 85; Motor Vehicles, 42CJ, section 1139, p. 1276, n. 4, 14; p. 1277, n. 16; section 1150, p. 1283, n. 23; section 1155, p. 1284, n. 48; section 1160, p. 1285, n. 78; Negligence, 45CJ, section 530, p. 976, n. 21; Trial, 38Cyc, p. 1693, n. 55.

*Mosman, Rogers & Buzard* for respondent.

*W. W. McCanles* for appellant.

ARNOLD, J.—This is an action in damages for personal injury. The facts disclosed are that plaintiff, a boy seven years of age, was struck by a Ford coupe driven by defendant east on Fifteenth street near its intersection with Mersington avenue in Kansas City, Mo., on Sunday, May 31, 1925, between the hours of 12:30 and one o'clock. P. M.

Plaintiff, with two of his brothers, George and Buford Buck, aged respectively fourteen and twelve years at the time, had left the north side of Fifteenth street and was crossing toward the south side thereof; they had reached the vicinity of the double street car tracks, being near the center of said street, the south track being used for eastbound traffic and the north for westbound cars. The testimony is that the boys were walking abreast, the older boy, George, being in the center, Buford on his left and plaintiff on his right, or west of him, and that George held plaintiff by the hand. The testimony is a bit conflicting as to whether the boys had paused or stopped on the south street car track, or in the space between the two tracks, or whether they had stopped at all. It appears that, as the boys were crossing the street the plaintiff held in his hand a toy commonly called a whirligig and which, since the advent of airplanes is referred to by children as a propeller. This toy is so constructed as to revolve when facing the wind, or when held horizontally in front of a moving child, much after the manner of a propeller on an airplane. The three boys had reached or

passed the center of Fifteenth street when plaintiff, breaking loose from the hand of his brother George, proceeded ahead of the others, and when he had reached a point approximately half way between the south street car track and the south curb of Fifteenth street, he was struck, knocked down and run over by defendant's automobile.

It is in evidence that before the boys started to cross the street, George and Buford looked to the east, saw some automobiles coming from that direction but far enough away to permit safe crossing; that they also looked to the west but saw no cars approaching. There is no evidence of record that there was any eastbound vehicle traffic on the street except defendant's coupe and a Ford touring car following it, neither of which was seen by plaintiff and his brothers. The testimony shows that approximately 100 to 200 feet west of the point of the accident is the crest of a hill and from that point eastward the decline is probably fifteen per cent. As to the rate of speed at which defendant's car was traveling the testimony is contradictory, ranging from fifteen to thirty miles per hour. There is also conflicting testimony as to whether defendant sounded his horn or gave any warning of his approach. Plaintiff's testimony tends to show no horn was sounded, while defendant states he sounded his horn when he reached the crest of the hill, 100 to 200 feet west, but not thereafter. As to the speed of the car there is testimony that defendant's car was going rapidly enough to pass a Ford touring car prior to reaching the crest of the hill mentioned above. Three men were seated in the touring car one of whom, a Mr. Cummings was seated in the rear seat alone, testified for plaintiff and stated defendant's car passed the one in which he was riding, at the rate of thirty miles per hour, but McWhorter the driver and Edward J. Flynn, the other passenger, testified they had no recollection of defendant's car having passed them. The purport of the evidence of McWhorter and Flynn is that the touring car followed the coupe at a distance of probably 100 feet and traveled at approximately the same speed, and that the touring car was being driven at the rate of about fifteen miles per hour.

Plaintiff's brothers, George and Buford, testified they did not see the offending car until the driver applied his brakes and that was practically at the moment of the collision. Witness Cummings testified he observed skid marks on the pavement just after the accident and they extended thirty to forty feet. Defendant succeeded in stopping his car after it had passed over the body of plaintiff, a distance of approximately five feet. He alighted, picked plaintiff up and carried him into a private house on the south side of Fifteenth street. An ambulance was called and plaintiff was taken to the General Hospital where he remained for a week or ten days.

The petition is formal and after enumerating the injuries received by plaintiff alleges the same were directly caused by and were due to the negligence and carelessness of defendant, as follows:

"1. He negligently and carelessly drove and operated his automobile at a dangerous and excessive rate of speed under the circumstances then and there existing.

"2. He negligently and carelessly failed to keep a careful and vigilant lookout for plaintiff and others upon said street.

"3. He negligently and carelessly failed to exercise the highest degree of care in the operation of said automobile as required by the laws of the State of Missouri, so as not to injure others.

"4. He negligently and carelessly failed to sound a signal of warning of an approach to plaintiff.

"5. Although he saw or by the exercise of due and proper care on his part might or could have seen the plaintiff in a position of peril and danger of being struck by said automobile in time thereafter by the exercise of due care on his part to have stopped said automobile or slackened the speed thereof or turned the same aside and thereby diverted the course thereof or to have sounded a signal of warning and thereby to have averted striking plaintiff, yet he negligently and carelessly failed to do any one or all of said things to avert said injuries to plaintiff."

Damages are sought in the sum of $10,000.

The answer is a general denial. Upon the pleadings thus made the cause went to trial to a jury, resulting in a judgment for plaintiff of $4500. Motions for a new trial and in arrest were overruled and defendant has appealed.

In support of the appeal, it is urged the court erred in giving plaintiff's instructions 1, 2, 3 and 4, and in refusing defendant's instruction 12. Instruction 1, against which error is charged, is as follows:

"The court instructs the jury that under the law of the State of Missouri it is the duty of every person operating a motor vehicle upon the highways of this State to drive the same in a careful and prudent manner and to exercise the highest degree of care and at such a rate of speed so as not to endanger the life or limb of any person, and you are instructed that the term 'highest degree of care' means such care as would ordinarily be exercised by a very careful and prudent person under the same or similar circumstances."

It is urged this instruction is erroneous because it is abstract and does not completely and clearly set forth the law of Missouri on this point; that it is misleading and created prejudice in the minds of the jury. The law to which this charge has reference is found in Session Laws 1921, sec. 19, p. 91, and is as follows:

"Every person operating a motor vehicle on the highways of this State shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the property of another or the life or limb of any person, provided that a rate of speed in excess of twenty-five miles an hour for a distance of one-half mile shall be considered as evidence, presumptive but not conclusive, of driving at a rate of speed which is not careful and prudent, . . ."

Defendant urges the instruction omits a very essential part of the law embodied in said section as follows:

"But the burden of proof shall continue to be on the prosecution to show by competent evidence that at the time and place charged the operator was driving at a rate of speed which was not careful and prudent, considering the time of day, the amount of vehicular and pedestrian traffic, condition of the highway and the location with reference to intersecting highways, curves, residences or schools; . . . ."

It is argued that under said instruction the jury might have concluded that defendant was guilty of negligence as a matter of law, in running even at a speed of eighteen or twenty miles per hour. Defendant suggests that if the instruction had told the jury that before negligence of defendant could be presumed it was necessary for him to run at the rate of twenty-five miles per hour, which is a part of the section, the jury doubtless would have considered that under the law as so stated defendant was not guilty of negligence.

The point of attack on this instruction seems to be that it does not state that the burden of proof is on the plaintiff to show by competent evidence that the driver was not driving at a rate of speed that was careful and prudent, considering the time of day, the amount of vehicular and pedestrian traffic, the condition of the highway, etc. The petition alleges:

"He negligently and carelessly failed to exercise the highest degree of care in the operation of said automobile as required by the laws of the State of Missouri, as to injuring others."

The instruction does not purport to cover the entire case, nor does it direct a verdict. It covers only the question of the degree of care required of a person operating a motor vehicle upon the highways of the State, declaring it shall be done in a careful and prudent manner and with the highest degree of care. This point was exhaustively discussed in Hults v. Miller, 299 S. W. l. c. 88, and it was there held:

". . . 'negligence' means the failure to exercise that degree of care commensurate with the circumstances, or the failure to exercise that degree of care which ought to be exercised under the circumstances, or the failure to exercise that degree of care which the

law demands under the circumstances. The law requires the driver of an automobile to exercise the highest degree of care. If the evidence therefore shows that the driver of an automobile failed to exercise the highest degree of care, this is proof that the driver was negligent.''

It must be held that the phrase ''under the circumstances'' as therein used includes time and place, rate of speed, the amount of vehicular and pedestrian traffic, condition of the highway, location with reference to intersecting highways, curves, residences and schools. We think the jury could not have been misled by the instruction, and it was for that body to determine whether plaintiff met this proof. [Benzel v. Anishanzlin, 297 S. W. (Mo. App.) 180; Miller v. Wilson, 288 S. W. 997; State ex rel. v. Allen, 250 S. W. (Mo.) 580, 585; Threadgill v. Rys. Co., 279 Mo. 466, 214 S. W. 161.] We hold the instruction good.

It is charged the court erred in giving plaintiff's instruction 2, which is as follows:

''The court instructs the jury that if you find and believe from the evidence that at the time in question the defendant negligently and carelessly drove and operated the automobile in question at a dangerous and excessive rate of speed under the circumstances then and there existing as shown by the evidence, if so, and that such negligence, if any, directly caused the automobile to strike the plaintiff, and if you believe that the plaintiff was injured thereby, then your verdict must be for the plaintiff.

''By the term 'negligence' and 'negligently and carelessly' as used in this instruction means the failure to use the highest degree of care.''

The objection urged is that the instruction is not definite and that it gives the jury a wide range for speculation and conjecture. The offending words are ''at the time in question,'' and in connection with this point, it is insisted the jury were not sufficiently instructed as to the application of the quoted words; also, defendant asks, ''What does the instruction mean when it says 'that such negligence, if any, directly caused the automobile to strike the plaintiff?' '' He asserts it was error to set out the negligence and that ''negligently and carelessly'' means the failure to use the highest degree of care; and that the instruction does not set out what were the circumstances then and there existing which would constitute negligence with relation to the speed of the automobile. The charge in the petition on which this instruction is based is as follows:

''He negligently and carelessly drove and operated his automobile at a dangerous and excessive rate of speed under the circumstances then and there existing.''

In support of this allegation there was ample evidence to the effect that the automobile was being driven at a speed of thirty miles per hour for a distance of about 200 feet immediately before striking plaintiff.

Appellant in his brief cites and quotes but one case on this point, i. e., Derrington v. City, 186 S. W. 561. The instruction in that case used the words "all reasonable care." The court merely held the use of the word "all" was objectionable and placed undue emphasis and the ruling there is not applicable here where the language is quite different. In Ginter v. O'Donoghue, 179 S. W. 732, this court determined the question here presented as follows:

"It will not do to say that, because there was no evidence of a greater speed than ten miles per hour, therefore the autoist was not negligent in the operation of his car, because the city ordinance specifies a limit of twelve miles. That is merely an outside limit beyond which the automobile cannot go. But because the city specifies a limit of twelve miles does not mean that an automobile driver can run his car, under any and all circumstances, at any rate of speed within that limit and yet be free of negligence. The measure of care required by the statute of the driver of a motor vehicle is to be determined according to the circumstances attending and surrounding the particular place. [Sec. 8523, R. S. 1909; Bongner v. Zeigenheim, 165 Mo. App. 328, 147 S. W. 182.] In order to determine whether the requisite care was observed, the running of the car must be viewed in the light of the 'exigencies of the situation.' [Haake v. Davis, 166 Mo. App. 249, 148 S. W. 450.]" [See, also, Goodwin v. Eugas, 236 S. W. 50, 53; Benzel v. Anishanzlin, supra, and cases therein cited.] We hold instruction No. 2 not erroneous in the respect charged.

A charge of error is directed against plaintiff's instruction No. 3 which is as follows:

"The court instructs the jury that if you find and believe from the evidence that the defendant negligently and carelessly failed to sound a signal of warning of the approach to plaintiff of the automobile in question and that said negligence, if any, directly caused the injuries, if any, to plaintiff, then your verdict must be for the plaintiff."

By this instruction it was intended to enlighten the jury on the following allegation in the petition:

"He negligently and carelessly failed to sound any signal or warning of his approach to plaintiff."

It is argued the instruction is erroneous because it does not define what is meant by the term "sound any signal of warning of the approach to plaintiff of the automobile." The words criticised are of such common usage it was unnecessary to define them in the

instruction. Moreover, it is the well-established rule in this State that if the defendant has any misgivings as to whether or not the jury would understand the language of a given instruction, then it is his duty to ask a more definite instruction. No such instruction was asked. The one complained of does not purport to cover the entire case; there was evidence that the defendant failed to sound a gong or horn or give other warning signal of the approaching car. The instruction given was proper. [Williams v. Taxicab Co., 241 S. W. 970; Ginter v. O'Donohue, supra; Miller v. Wilson, supra.]

It is charged the court erred in giving plaintiff's instruction No. 4, submitting the case to the jury on the humanitarian, or last chance, doctrine, the same having been embraced in the petition. The objection to the instruction is that it assumes plaintiff was crossing the street at the time of and immediately preceding the accident, and that the controversy centers around the question of whether or not, at the time of the injury plaintiff was "walking across the street," and if he was not so engaged, an entirely different degree of care was required of the defendant. In the light of the evidence presented, we hold this objection not tenable. Defendant's testimony alone would seem to negative the idea that there was any dispute on this point. Defendant testified that when he first saw the boys, plaintiff had his back to the south and that he suddenly turned and ran in front of the automobile where he was struck. Furthermore defendant testified he was driving his automobile nearer the south curb than the south track of the street car line and he first saw plaintiff near said track, his back to the south; that he suddenly ran to the south. Under this evidence and that in behalf of plaintiff the question as to whether plaintiff, in fact, was "crossing the street," is not disputed; and the charge of error against the instruction fails. There was no assumption in the respect charged.

It is argued the instruction is erroneous because it uses the words "place in question" without defining what these words mean; also, in using the expression "if you find that the defendant negligently and carelessly failed to do any one of said acts" etc. We think there was no reasonable chance the jury could have been misled by the use of the words "place in question." The instruction directs the attention of the jury to the accident which occurred in the street. That was the "place in question." There was no other place mentioned than the immediate scene of the accident. The instruction requires a finding upon all the essential elements of a cause of action under the humanitarian rule, and refers to these as "any one or all of said acts." There was no error in the giving of plaintiff's instruction No. 4.

It is asserted the court erred in refusing defendant's instruction No. 12, as follows:

"You are instructed that although the plaintiff was a child of tender years he was required to exercise such care as an ordinary prudent child of the same years would or should have exercised under the same or similar circumstances."

It is pointed out the court refused to give this instruction upon the theory that plaintiff, by reason of his tender years, was not capable of contributory negligence. It is admitted defendant did not set up contributory negligence in his answer but it is argued there was evidence showing the plaintiff, in fact, was negligent and therefore the instruction should have been given. The rule in this State is well established that the humanitarian rule, in its strict sense, presupposes the existence of contributory negligence, and an instruction on this point was unnecessary. [Hults v. Miller, 299 S. W. 85.] Contributory negligence is no defense under the humanitarian rule. [Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482.] As stated, we hold the constitutive facts necessary to be found as a basis for recovery under the humanitarian rule were supplied in plaintiff's instruction 4. Furthermore, defendant failed to save his exceptions to the court's ruling on instruction No. 12, in his motion for a new trial, and he is therefore in no position to urge the point here. There was no error in the refusal of the court to give said instruction.

Finally, it is charged the verdict was excessive. The testimony for plaintiff shows, and defendant admits, plaintiff's left eye is crossed and that it will remain so; that there is deafness in the left ear, also permanent; that plaintiff's teeth do not articulate properly in the center, due to the breaking of the jaw bone, and that this condition is permanent. The jury and the trial judge are in a more advantageous position than we to judge the extent of plaintiff's injuries. The jury fixed his damages at $4500 and the court refused to interfere with it. Neither the verdict of the jury nor the ruling of the court in this respect is conclusively binding on us, yet we refrain from interfering with the amount of the verdict, since we do not find it unreasonable. We fail to find reversible error of record. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.