E. L. PRAGUE, (Plaintiff) Respondent, v. TOM G. EDDY and JAMES R. SEWELL, (Defendants) Appellants.—No. 40610.—214 S. W. (2d) 521.

Court en Banc, November 8, 1948.

*Wilbur C. Schwartz* and *Joseph Nessenfeld* for appellant Tom G. Eddy.

*Fred H. Blades, John S. Marsalek* and *Moser, Marsalek, Carpenter, Cleary & Carter* for appellant James R. Sewell.

*Oliver J. Miller* and *Lashly, Lashly, Miller & Clifford* for respondent.

[521] CLARK, J.—Each defendant has appealed from a judgment against both for $23,000.00 in favor of plaintiff for damages for personal injuries. Plaintiff's injuries were caused by a collision between an automobile in which he was riding as a guest, driven by defendant Eddy, and an automobile driven by defendant Sewell. The collision occurred at [522] night in the south lane of U. S. Highway 66 in St. Louis County. The highway is paved and consists of four nine foot lanes marked by intervening black stripes. Just prior to the collision the Eddy car was traveling west in the north lane and the Sewell car was approaching from the west in the south lane. The engine of the Eddy car had been missing and defendant Eddy decided to make a left turn across the highway to a filling station located south of the highway. The Sewell car, traveling east in the south lane, struck the right side of the Eddy car near the front with sufficient force to greatly damage both cars and severely injure plaintiff who was riding on the right side of the front seat in the Eddy car.

From this point the evidence is somewhat in conflict, the plaintiff seeking to make a case against both defendants and each defendant seeking to absolve himself and place the entire blame on the other defendant.

Against each defendant only primary or antecedent negligence is alleged, no violation of the humanitarian doctrine being stated. As summarized in respondent's brief, the charges of negligence are as follows:

Against defendant Eddy: "that said defendant, while attempting to make a left turn across Highway 66, failed to exercise the highest degree of care to keep a watch ahead and laterally, in the direction in which he was driving his car, for other automobiles."

Against defendant Sewell: "that said defendant negligently failed to exercise the highest degree of care to operate and drive his motor car in a careful and prudent manner and at a rate of speed so as not to endanger the life and limb of any person there and of the plaintiff."

There were three other persons in the Eddy car besides Eddy and the plaintiff. The plaintiff was made unconscious by the collision and furnished little testimony of importance except as to the extent of his injuries. Trooper Maxey of the State Highway Patrol testified that he reached the scene some time after the collision; that he questioned both drivers; that Eddy said "My motor started missing down the road and I started to turn left across the road into a service station when we hit. I never did see him;" that Sewell said: "I was going east when he cut right in front of me." This witness said he found no skid marks on the highway. Miss Lindemann testified that she was sitting in the front seat between plaintiff and the driver, Eddy; that the Eddy car was traveling east in the north lane

at a speed of 25 to 30 miles per hour; that the engine was missing and she suggested that they turn into the filling station; that Eddy slowed to about ten miles per hour and made a gradual turn to the left and traveled fifty or sixty feet before the collision occurred in the south lane; that when the Eddy car started to turn she saw through the right side window a headlight on the Sewell car about 300 feet to the west, but thought they had time to turn off the highway. On cross examination she said the Eddy car first turned into an inner lane still proceeding west and then made the turn to the filling station. The foregoing witnesses were called by plaintiff who also introduced defendant Sewell as a witness. Sewell testified that he was driving east in the south lane at about 35 miles per hour when he saw the Eddy car pull out from another car in the north lane; that the Eddy car proceeded a short distance west in the third lane and then cut directly across in front of him; that when Eddy cut in front of him he was only five or six feet away. Miss Lindemann denied that there was any westbound car in front of the Eddy car.

Defendant Eddy, testifying in his own behalf, said that he was driving slowly to the west in the north lane; that his engine had been missing; that he saw the lights of a filling station south of the highway and Miss Lindemann suggested that they drive to it; that he made a gradual sweeping turn across the highway, traveling about 27 or 28 feet to the west and about the same distance to the south. When he started to turn he saw a dim light on a car approaching from the west about a block distant, but thought he had time to make the turn and did not look again.

Eddy assigns as error the giving of instruction No. 1 at request of plaintiff. Sewell [523] claims error in the giving of plaintiff's instruction No. 2. Both claim error in the closing argument of plaintiff's attorney and the ruling of the court thereon, and also contend that the verdict is excessive.

Instruction No. 1 in substance told the jury that they should find against defendant Eddy if they found that plaintiff was in the exercise of due care, that Eddy was operating a car westwardly along the highway while the Sewell car was approaching from the west, and that "he negligently and carelessly failed to keep a watch ahead and laterally in the direction in which he was driving" etc.

Eddy says that the instruction permits a finding against him if he failed to keep a watch without requiring a finding of any facts as to what he failed to do or should have done under the circumstances, and that it permitted the jury to speculate or conjecture.

In support of his contention he cites Carle v. Akin (Mo.), 87 S. W. (2d) 406, and Brown v. Toedebush Transfer Co., 354 Mo. 611, 190 S. W. (2d) 239. Those cases are not in point. In Carle v. Akin both primary and humanitarian negligence were alleged. Failure of defendant to keep a lookout was included in an instruction

on humanitarian negligence. In another instruction, which we held bad, plaintiff attempted to set up defendant's failure to keep a lookout as a separate independent charge of primary negligence. In Brown v. Toedebush Transfer Co., an instruction submitted as the proximate cause of the collision the driving of defendant on the wrong side of the road. We held it was proper to refuse another instruction submitting defendant's failure to keep a lookout as a separate charge. The instant case was submitted on primary negligence alone. Instruction No. 1 does not submit defendant Eddy's failure to keep a lookout as the proximate cause of the collision but submits his negligence in driving across the highway in front of an approaching car without keeping a lookout. We hold the instruction proper.

Plaintiff's instruction No. 2, after stating that if the jury found that Eddy's car turned south across the highway while Sewell's car was approaching from the west, "then you are instructed that it was the duty of defendant, James R. Sewell, to exercise the highest degree of care to operate his automobile in a careful and prudent manner and at a rate of speed so as not to endanger the life and limb of any person there, and particularly the plaintiff." And if they found that Sewell did operate his car at a high and excessive rate of speed under the circumstances they should find for plaintiff.

We think this instruction is misleading and unsupported by the evidence. By a careful reading of the instruction, or rather by several readings, we are led to believe that it charges Sewell with negligently driving at excessive speed only *after* Eddy's car began to turn across the highway, but the jury likely got the impression that Sewell was negligent if he was driving at a high rate of speed *before* Eddy began to turn. The only direct evidence of Sewell's speed was furnished by Sewell himself. He said he was driving about 35 miles per hour and no witness said he was driving faster. Appellant's brief seeks to raise an inference of high speed by the extent of damage to the two cars. We do not think such an inference arises, and besides the Eddy car was not pushed along the highway by the impact. It was just turned slightly to the southeast. Sewell's speed prior to the time Eddy began to turn is not in issue.

In his attempt to fasten liability on both defendants, respondent's argument is somewhat conflicting. As to Eddy, plaintiff argues that Highway 66 at the point in question "has been known for years as the Main Street of America," and carries continuous traffic twenty-four hours a day; that "Eddy knew, when he started his turn, that a headlight was approaching on the eastbound lanes of this highway, from a distance of 300 to 400 feet. This distance at high speed can melt away in a matter of seconds at the speed common on a highway built for such speeds as this one." "According to his own admission, he drove blindly into the danger." "He actually ran directly in front of it, blindly."

The foregoing argument of plaintiff as to the negligence of Eddy is, we think, supported [524] by the evidence, but respondent does not stand upon such firm footing in his effort to fasten liability upon Sewell. The only direct evidence of Sewell's speed [35 miles per hour] and his distance away when the Eddy car crossed his path [5 or 6 feet] was furnished by Sewell himself. But respondent, by mathematical calculation based upon the testimony of Eddy as to his speed and the distance he traveled west and south across the highway, tries to show that Sewell was farther away than he said he was when Eddy began to turn and when he reached the south lane. In this calculation plaintiff ignores the testimony of his own witness, Miss Lindemann, that Eddy first turned into the inner lane and proceeded some distance west before starting to turn across Sewell's lane. Then plaintiff, from the extent of damage to the cars, conjectures that Sewell was traveling much faster than 35 miles per hour, although he concedes that the law is only incidentally concerned with his speed prior to the time Eddy began to turn toward his lane. In other words, that Sewell's speed could not endanger the occupants of the Eddy car while it was proceeding in another lane. As we understand plaintiff, Sewell's speed was entirely proper until the Eddy car unexpectedly began to turn and at that instant his speed constituted negligence. Bear in mind that the only charge against Sewell is one of primary negligence in driving at excessive speed *after* the other car began to turn. Of course, the faster Sewell was driving *before* that time the closer he would be to the Eddy car when it turned in front of him and the harder it would be for him to avoid a collision.

The case against Sewell rests upon conjecture and speculation. As he does not make the point that plaintiff failed to make a submissible case, we should not reverse the case against him outright, but must remand it because instruction No. 2 is unsupported by the evidence and is prejudicially misleading.

The case must be remanded as to both appellants because of remarks made by plaintiff's counsel in his closing argument. We quote from the transcript:

"Mr. Miller: That is a sort of insurance that he is going to get something out of this thing—a guarantee against both of them that he will come out of it.

"Mr. Schwartz: I object to that. A verdict against one is as good as a verdict against the other.

"Mr. Blades: That's right.

"Mr. Miller: I am sure I am entitled to that—to a verdict against both of them.

"The Court: Yes, that is all right. I will overrule that."

Further objections were made by defendants' counsel who also asked the court to declare a mistrial. All objections were overruled.

Later plaintiff's attorney argued that plaintiff was entitled to a verdict against both defendants and stated to the jury: "That if you can go to your jury room and say from this evidence and the argument of counsel there is in my mind a feeling that if one or the other or both gentlemen had been up on the job, there wouldn't have been this accident, then both of them are negligent, and it is my duty under the instructions of the court to give Mr. Prague all he is entitled to, and that is a verdict against both defendants." Objections to this argument were overruled by the court.

Defendants contend first that the reference to "insurance" might lead the jury to believe that one or both of defendants carried insurance covering liability for the collision. We are not clearly convinced that the argument would have that effect. But, leaving out the question of casualty insurance, the argument is improper in claiming a verdict for plaintiff against both defendants, not because of negligence, but because plaintiff would thereby be more likely to collect a judgment. Moreover, it was especially harmful because the court seemed to agree that plaintiff was entitled to a verdict against both defendants.

Plaintiff says, in effect, that the transcript does not present a true picture of what happened; that the record is muddled due to the words of two persons overlapping; that the jury did not hear the court's remark, [525] and that the objections went to the statements of counsel and not to the remarks of the court.

We are bound by the transcript which was approved by the attorneys on both sides. It is the policy of the courts, trial and appellate, to permit a wide range for argument, but we feel that the argument here compels us to remand the case. It was entirely proper for the attorney to argue that *the evidence* justified a verdict against both defendants, but it was highly improper to demand a verdict against both because that would facilitate collection, or to argue that plaintiff was entitled to a joint verdict if *one or the other* had not been up on the job, that is, if *either* was negligent. Such argument, seeming to receive the court's approval, must have had great influence with the jury. [Mooney v. Terminal Ry., 352 Mo. 245, 176 S. W. (2d) 605; Primmer v. American Car & Foundry Co. (Mo. App.) 299 S. W. 825; Courter v. Chase Merc. Co. (Mo. App.) 299 S. W. 622; Stubenhaver v. K. C. Rys. Co. (Mo. App.) 213 S. W. 144; Rose v. Kansas City, 125 Mo. App. 231, 102 S. W. 578.]

The judgment is reversed and cause remanded for new trial as to both defendants. All concur.