231 S.W.2d 689 (1950)
CUDDY
v.
SCHENEWARK.
No. 41797.
Supreme Court of Missouri, Division No. 1.
July 10, 1950.
Fred F. Wesner, Sedalia, Howard B. Lang, Jr., Columbia, of counsel, for appellant.
George H. Miller, Sedalia, attorney for respondent.
CONKLING, Presiding Judge.
Marie Cuddy (hereinafter called plaintiff) had judgment against F. W. Schenewark (hereinafter called defendant) for $10,000 damages for personal injuries sustained in the head-on collision of two automobiles about 8 P. M., on August 20, 1948, on Highway 65, south of Sedalia, Missouri. Defendant perfected this appeal from that judgment. It is not here contended that the evidence did not make a case for the jury. The complaint is that plaintiff's given instructions 2 and 3 were erroneous and that the verdict is excessive.
Plaintiff was driving her car north on the right and east side of Highway 65 toward Sedalia. Highway 65 was there straight, dry, paved with concrete and about 18 feet wide. At that place the highway runs in a northerly and southerly direction. Two women friends were in plaintiff's car. It was dark enough that the headlights had been turned on on all cars going each direction. About two miles north of Windsor Junction two southbound cars approached from the north. Both of those southbound cars were then on the *690 west half of the highway. As plaintiff's car was passing the first of the two southbound cars, the second southbound car (driven by defendant and closely following the first southbound car) swerved across the centerline of the highway, and onto the east half of the highway and struck plaintiff's car at the left front corner. The collision occurred on the east side (plaintiff's side) of the centerline on the highway. Plaintiff suffered severe personal injuries.
Upon direct examination defendant testified he was driving 40 to 45 miles per hour; that the car he was following "didn't have any tail lights"; that, "sometimes it (the car defendant was following) was out of sight and sometimes in sight from Flat Creek Inn down (south) to where the wreck was"; that, "all at once I seen that car and Coontz (a passenger in defendant's car) says `hold it'. Of course now I put my foot on the clutch and brake and slid over the (center) line and hit Miss Cuddy's car." Mr. Coontz testified: " * * * it was dark when we drove in behind a car which had no tail lights; we saw no signal or tail light on the car ahead of us and we run up on it and before we could stop we slid over into the opposite (northbound) lane and Miss Cuddy and Mr. Schenewark's car collided." Coontz testified defendant's car was moving at 50 miles per hour. Both Mr. Coontz and his wife were riding in the front seat of the Schenewark 1940 Chevrolet.
The negligence alleged in the petition was that "defendant * * * negligently, carelessly and recklessly drove his car * * * across the centerline of said pavement and on the east side of said pavement and into the line of northbound traffic * * * and into and against plaintiff's car."
Plaintiff submitted her case to the jury and predicated her recovery in her instruction 1 (of which no complaint is here made) upon the theory alleged in her petition and established by all the evidence, that if defendant drove south on Highway 65 and "drove his car across the center line of said pavement and on the east side of said pavement and into the line of north traffic and drove his automobile into and against plaintiff's car * * * and * * * that * * * in driving his automobile across the centerline of said pavement plaintiff was negligent and that such negligence, if any, was the direct and proximate cause of the injuries to the plaintiff, then, your finding and verdict must be for the plaintiff."
Defendant complains here of the first paragraph of plaintiff's instruction 2. Instruction 2 does not predicate a verdict at all. The first paragraph of that instruction is as follows: "The Court instructs the jury that under the law it is the duty of the driver and operator of a motor vehicle upon a public road or highway to drive the same in a careful and prudent manner; and to exercise the highest degree of care, and at a rate of speed so as not to endanger the life or limb of any person." The second and last paragraph of instruction 2 correctly defined "negligence" and the "highest degree of care." Defendant contends that the concluding words of the first paragraph: "and at a rate of speed so as not to endanger the life or limb of any person", injects into the case the issue of the speed of defendant's automobile, and thus permits a recovery by plaintiff upon a theory outside the issues made by the pleadings. Defendant relies on Prague v. Eddy, 358 Mo. 327, 214 S.W.2d 521, 523, Schipper v. Brashear Truck Co., Mo.Sup., 132 S.W.2d 993, 995, 125 A.L.R. 674, and Christman v. Reichholdt, Mo.App., 150 S.W.2d 527, 537. Those cases have been carefully examined and their applicability considered.
In Prague v. Eddy, supra, we considered an instruction containing somewhat similar language but the facts of that case were wholly unlike those now before us. The question now before us here was not presented at all in the Prague case. The instruction there considered predicated a verdict. The instant instruction does not. Our re-examination of that entire Prague case instruction in our files of that case but demonstrates again that it was susceptible of the construction our opinion placed upon it. But that case is no authority for the contention instantly made *691 by defendant. Christman v. Reichholdt frowns upon the practice of giving an instruction stating, even correctly, an abstract rule of law when unaccompanied by "further call for a finding by the jury of all the facts required by law to justify a verdict." [150 S.W.2d 532.] But the question now before us was not before the court in that case. The rule stated in the Christman case in the above respect is the better and preferred practice but under the circumstances here, the fact that instruction 2 omitted to call for a finding as to further facts and predicate a verdict did not render it reversibly erroneous. Schipper v. Brashear Truck Co., supra, ruled that the refusal of the court to give an abstract instruction was not reversible error. That question is not before us. The above cases cited by defendant are no authority for his instant contention.
R.S.Mo.1939, § 8383, Mo.R.S.A., in part, provides that, "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the * * * life or limb of any person," etc. Instruction 2 here stated in terms that statutory duty, and then defined the highest degree of care and negligence. No verdict was authorized therein. It would have conformed with the better practice, often suggested to the bar, that if plaintiff desired to use the above statutory words in an instruction, she should have incorporated them in her theory instruction predicating a verdict. But under these circumstances we cannot rule that reversible error has been committed. Instruction 1 was the only instruction upon which the jury were authorized to base a verdict for plaintiff. The fact that the first paragraph of instruction 2 used the statutory words as to the manner in which motor vehicles shall be driven did not authorize or predicate a verdict upon speed. Nor did it inject the speed issue into the case.
Knowing there was a motor car without a lighted tail light running south on his side of the highway somewhere ahead of him, and having that motor car at times in his view and at other times not in his view, plaintiff's case in chief established that he ran his car some miles at from 40 to 50 miles per hour. Defendant admitted he ran up behind that motor car that had no lighted tail light at such speed that "all at once I seen that car and Coontz says `hold it', * * * I put my foot on the clutch and brake and slid over the line and hit Miss Cuddy's car." Mr. Coontz testified that the wheels of defendant's car slid about twenty feet and that defendant had applied the brakes "about twenty feet before the actual impact." Under these circumstances it was not error to use the words of our statute to instruct the jury as to the defendant's duty under Missouri law as to the manner of the operation of his car. If instruction 2 had merely abstractly instructed as to duty and had also predicated a verdict, a different situation might well be before us We rule that, under these circumstances the giving of instruction 2 was not reversible error. State ex rel. State Highway Commission v. Hartman, 226 Mo.App. 604. 44 S.W.2d 169, State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S.W.2d 667, Buck v. Thatcher, 222 Mo.App. 1036, 7 S.W.2d 398.
It is next contended that the concluding paragraph of the measure of damage instruction, number 3, is erroneous for implying "that the court is of the opinion that the evidence warrants an assessment of damages." Plaintiff prayed damages of $25,000 in her petition. The jury allowed her only $10,000 damages. After instructing upon the measure of damages, the first paragraph of the instruction concluded with the words: "not to exceed, however, the sum of $25,000 in the aggregate." The second and last paragraph of instruction 3 was in these words: "You are further instructed that in mentioning said sum of $25,000.00, the Court does not mean you should find for the plaintiff in said amount, or in any amount, but mentions said amount as the amount claimed by the plaintiff in her petition beyond which you cannot, in any event, go."
There is no merit in appellant's contention. The jury were specifically cautioned that, "the court does not mean you should *692 find for the plaintiff in said amount or in any amount." The verdict was for less than half the amount sued for and mentioned in the instruction. Clearly the jury exercised its own judgment. Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; Pogue v. Rosegrant, Mo.Sup., 98 S.W. 2d 528. The plain words of the instruction disprove defendant's contention. The assignment must be denied.
It is last contended that the verdict is excessive. Miss Cuddy was 30 years of age. Her home was at Lincoln, Missouri. She was there a bookkeeper and teller in a bank at a salary of $105 per month. Following the collision plaintiff was first taken to a hospital and then sent home. As a result of the collision she was thrown against parts of her car. Her knee struck the instrument board. Her breast struck the steering wheel. She suffered cuts and bruises over her entire body. A hole was "gouged" in her arm. Her back was sprained. Confined to her bed for about a month, she could bear no weight upon her left leg. After the accident there was a lump in one of her breasts. She was first treated by Doctor Glenn, of Warsaw. Her left leg swelled to nearly twice its normal size and sedatives were regularly administered. Later plaintiff went to an orthopedic surgeon in Kansas City who operated her left knee in Research Hospital in July, 1949. The ligaments of that knee were torn. Xrays showed a "calcification in the attachment of the ligaments on the inner side of the left knee * * * and nature had deposited that calcium deposit in response to a hemorrhage when those ligaments were so stretched and torn." Her leg was atrophied. When the knee was cut open for the operation the internal cartilage "was found to be fractured and displaced backward into the knee joint. It was knocked out of its original position in the joint." That cartilage was entirely removed. She had expense for special nurses. She remained in the hospital for 12 days.
At the time of trial (13 months after the accident) the knee had only 25% of its normal motion, and was greatly swelled up. She will never have much use of her leg. Her knee condition was getting progressively worse. The knee injury is permanent. She wears a support for the knee and leg. Her doctor could not tell when plaintiff might be able to return to work or walk at all. Her hospital bill for the knee operation was $604.85 and her surgeon's bill was $300 to $350. Plaintiff testified that arrangements had been made that soon after the trial she would be hospitalized and operated for the removal of the lump about the size of a walnut in her right breast. Doctor Wilkinson, of Kansas City, had been employed for that operation. From October, 1948 to July, 1949 when her knee was operated) plaintiff attempted to perform some of her work at the bank by walking on a cane. Her leg was then very painful to walk upon. Since the operation she has been unable to even attempt her work.
Is the verdict of the jury excessive in amount? These problems of attempting to maintain a standard of uniformity of judgments in personal injury cases are exceedingly difficult. Many factors must be considered. No two situations are alike. Against the background of our recent decisions we consider the particular injuries sustained and pain suffered, the prognosis of the attending doctors, economic conditions, expenses incurred and to be incurred, earnings losses and other pertinent factors. In refusing to require a remittitur in this case the learned trial judge observed: "The plaintiff has spent considerable money for hospital and medical services: she has lost a substantial sum in wages on account of her inability to work. She has undoubtedly suffered considerable physical pain and will in the future. It is hard to say what is right and just compensation for pain and suffering. In view of the testimony it is difficult to say the verdict of the jury in awarding plaintiff damages was excessive."
Defendant cites but one case to support his contention. Examination of that case, McGarvey v. City of St. Louis, 358 Mo. 940, 218 S.W.2d 542, quickly demonstrates it is not authoritative here. We find no adjudicated case supporting defendant's contention that this verdict is excessive. In the last analysis we must determine whether *693 the size of the verdict is such as to shock the conscience of the court, or whether it is within the bounds of reason. We have concluded that this verdict is within the bounds of reason. The assignment as to excessive verdict must be overruled. The judgment of the circuit court is therefore affirmed. It is so ordered.
All concur.