Raymonde **GAFFNER**, Respondent,

v.

Richard **ALEXANDER**, Appellant.

No. 47216.

Supreme Court of Missouri,

Division No. 2.

Feb. 8, 1960.

Fred B. Whalen, Warren Grauel, Whalen, O'Connor & Grauel, St. Louis, for appellant.

Sherman Landau, St. Louis, for respondent.

STORCKMAN, Judge.

This is an action to recover damages in the sum of $12,500 for personal injuries alleged to have been received by the plaintiff when her husband's automobile in which she was a passenger collided with another operated by the defendant. The verdict and judgment were for the plaintiff in the sum of $3,500. The trial court sustained the plaintiff's motion for new trial on the issue of damages only and overruled the defendant's motion for new trial. The defendant has appealed. The sole question presented for review is whether the trial court erred in refusing to sustain the defendant's motion for new trial as to all issues on the ground that

plaintiff's verdict-directing instruction was prejudicially erroneous.

At about 8:30 p. m., on August 18, 1956, the plaintiff was riding as a passenger in the front seat of a 1953 Packard convertible automobile owned and being operated by her husband, Ramon W. Gaffner, southwardly on U. S. Highway 66 in St. Louis County. Their son, nine years of age, was riding alone in the rear seat. The Gaffners had mistakenly gone to a motel in the north part of St. Louis County to meet some friends with whom they had an engagement. At the time of the collision they were on their way to another motel in the south part of the County where they expected their friends might be. It was "basically dark" and the automobiles with which we are concerned had their headlights on.

The defendant had driven his 1949 Pontiac club coupe automobile north on Highway 66. With him were Mrs. Louise Grace, to whom he was married at the time of the trial, and her six-year-old daughter by a previous marriage. They had intended to go to a drive-in theater in the vicinity of Natural Bridge Road. Thinking that he had gone too far north, the defendant undertook to turn his automobile so as to proceed south on Highway 66, a movement which is commonly referred to as a U-turn. While he was making the turn or immediately thereafter the automobiles of the defendant and plaintiff's husband collided on the highway and the plaintiff received the injuries which are the basis of this suit.

At the place in question Highway 66 extends generally north and south and is forty-feet wide; it consists of four traffic lanes, each ten feet in width, two of which are for southbound and two for northbound traffic. The highway is also the route of U. S. Highway 67 By-pass and is named and known locally as Lindbergh Boulevard. The place where the collision occurred is at or near the crest of a hill about .2 of a mile south of the intersection of Long Road and Highway 66. The crest of the hill was level for about 100 feet and then sloped away both to the north and south. The north slope with which we are chiefly concerned extended downgrade for approximately 450 feet to a filling station and then was straight and level for approximately 250 feet before beginning the upward grade toward the next crest.

The plaintiff's evidence tended to prove that as Mr. Gaffner approached the crest of the hill south of the filling station he was driving his automobile in the outside or westernmost traffic lane at a speed of 40 to 50 miles per hour. His forward view was limited by the contour of the highway to a distance of 50 to 75 feet. He first saw the defendant's automobile south of the crest in the process of making a U-turn on the highway about 50 to 75 feet ahead of his car. The Pontiac was crossways of the highway headed west and at first sight appeared to be stationary. It then moved toward the west lane and directly into the path of the Gaffner automobile. Mr. Gaffner sounded his horn, applied his brakes, and swerved to his left or to the east in an effort to pass behind the Pontiac. The collision occurred when the front end of the Pontiac was in the outside lane and its rear portion in the inside southbound lane. The right front corner of the Gaffner automobile struck the center of the rear of defendant's automobile. The collision occurred about 50 to 75 feet south of the crest of the hill. The defendant's automobile ran off of the west side of the pavement and into an embankment. The Gaffner automobile stopped on the pavement.

The defendant testified that before starting the U-turn he drove his automobile onto the east shoulder of the highway about 150 feet north of the crest of the hill. At this point the hill sloped downgrade to the north about 300 feet to the automobile service station. From where he stopped on the shoulder of the highway, the defendant testified that he had a

range of visibility of 150 feet south to the crest of the hill and that he could see the headlight rays of approaching automobiles at a greater distance before they came over the hill from the south. After waiting until the traffic cleared, he saw what proved to be the Gaffner automobile coming from the north about one-half mile away. The defendant then started his turn and had moved to the center of the highway and was moving at a rate of 10 to 12 miles per hour when he again observed the Gaffner automobile at the filling station about 300 feet north. The defendant testified that he had completed his turn, had traveled for a distance of 50 to 100 feet south in the outside or westernmost lane of traffic, had attained a speed of about 20 miles per hour and was about to shift from second to high gear, when he was struck from the rear by the Gaffner car.

Thus, it is apparent that the principal controversy is with ·respect to the place where the U-turn was made and the collision occurred. On the one hand, the plaintiff contends that the defendant made his U-turn south of the crest of the hill and at a point where her driver's forward view was obstructed by the crest of the hill. On the other hand, the defendant's contention is that the U-turn was made on the north side of the crest of the hill and at a place where there was an unobstructed view of the highway to the north for a distance of about one-half mile.

The defendant contends that plaintiff's Instruction No. 1 is fatally defective in that it fails to hypothesize facts essential to the plaintiff's recovery and that the instruction is in effect a restatement of § 304.018 without defining and applying the statute to the facts of the case. The instruction involved reads as follows:

"The court instructs the jury that a statute in full force and effect at the time of the collision shown in evidence provides in part as follows:

" 'It shall be unlawful for the driver of any vehicle to turn such vehicle so as to proceed in the opposite direction * * * at any place unless the movement can be made in safety and without interfering with other traffic. The driver of a vehicle shall not turn such vehicle around so as to proceed in the opposite direction * * * upon the approach to or near the crest of a grade, or at any place upon a roadway where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction along the highway within a distance of 300 feet, or where the same may create a traffic hazard.'

"Therefore, if you find and believe from the evidence that on the occasion shown in evidence the defendant, Richard Alexander, made a U-turn on Lindbergh Boulevard at a place where the movement could not be made in safety and without interfering with other traffic, and that the place where defendant made the U-turn was upon the approach to or near the crest of a grade, or that the U-turn was made at a place upon said Lindbergh Boulevard where defendant's automobile could not be seen by Mr. Gaffner within a distance of 300 feet, or where such movement of defendant's automobile created a traffic hazard, then you are instructed that such conduct on the part of defendant constituted negligence;

"And if you further find that such negligence on the part of defendant directly caused, or directly contributed to cause, the collision shown in evidence, and that plaintiff was injured in such collision, then your verdict shall be in favor of the plaintiff, Mrs. Raymonde Gaffner, and against the defendant, Richard Alexander."

The complete text of paragraph 2, § 304.-018, RSMo 1949, as enacted Laws 1953, p. 587, V.A.M.S., which regulates U-turns and upon which the instruction is predicated, is as follows:

"2. It shall be unlawful for the driver of any vehicle to turn such vehicle so as to proceed in the opposite direction at any intersection controlled by a traffic signal or police officer; nor shall such turn be made at any place unless the movement can be made in safety and without interfering with other traffic. The driver of a vehicle shall not turn such vehicle around so as to proceed in the opposite direction upon any curve or upon the approach to or near the crest of a grade, or at any place upon a roadway where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction along the roadway within a distance of three hundred feet, or where the same may create a traffic hazard."

The fundamental difficulty with the instruction arises out of the failure to construe the statute properly and to apply the pertinent portions to the facts in evidence upon which the plaintiff depends for her recovery.

■ An injured party may sue at common law for negligence and set up and prove a violation of a statutory duty as constituting a negligent act on defendant's part. Lenz v. Seibert, Mo.App., 259 S.W. 829, 831[3]; State ex rel. Wells v. Mayfield, 365 Mo. 238, 281 S.W.2d 9, 13[3, 4]; 65 C.J.S. Negligence § 19, p. 415. Such statutes establish standards by which the fact of negligence may be determined. The gist of the action is still negligence, or the breach of the legal duty owed to the person injured.

■ The fact that violation of a statutory duty is relied upon to establish negligence, however, does not relieve the submission of negligence from compliance with the requirements of proper instructions. An instruction cannot be considered free from error merely because it is in the language of the statute especially if the statutory language calls for judicial construction. Smith v. Harbison-Walker Refractories Co., 340 Mo. 389, 100 S.W.2d

909, 921[18]; Wolf v. Mallinckrodt Chemical Works, 336 Mo. 746, 81 S.W.2d 323, 332[7]; Cieslinski v. Clark, Mo.App., 223 S.W.2d 139, 143[12].

The restrictions on U-turns at intersections controlled by a traffic signal or a police officer and on curves and grades or elsewhere where the vehicle so turning cannot be seen by the driver of another vehicle approaching from either direction within a distance of 300 feet are fixed and definite standards prescribed by the statute. The rest of the section is in general terms and establishes no fixed standards of conduct. The provisions that such turns shall not be made at any place unless they can be made with safety and without interfering with traffic or where they may create a traffic hazard, so far as *motor* vehicles are concerned, add little or nothing to the statutory duty of exercising the highest degree of care which is imposed upon every person operating a motor vehicle upon the highways of this state. Section 304.010.

A legislative standard of conduct may be established "which is final and conclusive, except in so far as the enactment requires construction or creates a standard so vague as to require definition by a court or jury before its application to the facts of a particular case." American Law Institute, Restatement of The Law, Torts, § 285, comment b.

The source of the material in § 304.018 is not altogether clear especially the first sentence of paragraph 2 which is designed apparently for application largely in urban communities. The primary source of the second or last sentence of the paragraph (and with which we are principally concerned) is probably the Uniform Laws Annotated, Vol. 11, Motor Vehicles & Aeronautics, § 34, which, as published in 1938, reads as follows: "The driver of a vehicle shall not turn such vehicle around so as to proceed in the opposite direction upon any curve or upon the approach to or near the crest of a grade or at any

place upon a highway where the view of such vehicle is obstructed within a distance of five hundred (500) feet along the highway in either direction."

A limited research reveals that several states have adopted this provision in substantially its original form. Baldwin's Ohio Revised Code Annotated, 2d Ed., § 4511.37, provides: "No vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to or near the crest of a grade, if such vehicle cannot be seen within five hundred feet by the driver of any other vehicle approaching from either direction." Smith-Hurd Illinois Annotated Statutes, Permanent Edition, Chapter 95½, § 160, reads as follows: "No vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to, or near the crest of a grade, where such vehicle can not be seen by the driver of any other vehicle approaching from either direction within 500 feet."

There are many highways of modern construction where the curves are so gradual and the grades so long and straight that U-turns under the limitations specified can be made as safely there as anywhere. This construction of the Missouri statute renders it reasonable and gives effect to all of its provisions. Any ambiguity in the manner of expressing the distance limitation in the statutes of Missouri and of other states is clarified by reference to the original version in the Uniform Laws.

The plaintiff's evidence made a case that the defendant turned his vehicle around so as to proceed in the opposite direction at a place on the south approach to and near the crest of the grade where the view of his automobile was obstructed within 300 feet along the highway to the north. But that theory was not properly submitted; nor did the instruction hypothesize any facts to bring the case within any of the general provisions of the statute.

■ Mere abstract statements of legal propositions do not make proper instructions, and an instruction authorizing the jury to return a verdict for a party must require the finding of all essential fact issues necessary to establish the legal proposition on which the right to the verdict is based. Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S.W.2d 54, 56[1]; Carson v. Evans, 351 Mo. 376, 173 S.W.2d 30, 31[1]; Cuddy v. Schenewark, Mo., 231 S.W.2d 689, 690[1].

■ Since the instruction submits grounds of negligence in the disjunctive, each such ground must be adequate and supported by substantial evidence. Steele v. Goosen, Mo., 329 S.W.2d 703, 708[3]. All three of the disjunctive submissions are deficient in factual hypothesization.

The plaintiff cites no authority in support of the correctness of the instruction, but contends that any error "would be harmless as defendant's own testimony convicted him of negligence per se" in making the U-turn. In support of this assertion, the plaintiff cites Hill v. St. Louis Public Service Co., Mo., 64 S.W.2d 633, in which the plaintiff and his driver were held guilty of contributory negligence on their own testimony in undertaking to make a U-turn across streetcar tracks in front of a streetcar running at 30 to 35 miles per hour which the motorists could have seen if they had looked. The Hill case is not controlling because the testimony of the defendant in this case tended to prove the turn was made on the north slope where his automobile was visible for a distance greater than 300 feet. The present situation is rather the converse of that in the Hill case.

The plaintiff insists, however, that the defendant's testimony that he made the turn 150 feet north of the crest convicts him of negligence because he could not have been seen by motorists approaching from the *south* for the distance required by statute. She calls attention to the fact that the statute says "approaching from

*either* direction" and asserts that the alleged violation of duty (owed to motorists approaching from the south) is negligence per se and that the issue of proximate causation was for the jury as submitted by the third paragraph of plaintiff's instruction.

We need not ponder the question of whether the violation of the statutory duty owed to motorists who might have approached from the south but did not do so constituted negligence. The rule as to when it is proper to direct a verdict is also applicable to questions of proximate cause. Cummings v. Illinois Central R. Co., 364 Mo. 868, 269 S.W.2d 111, 116[5], 47 A.L.R.2d 513; Downing v. Dixon, Mo., 313 S.W.2d 644, 650[4]. There is no evidence from which it could reasonably be found that the possible concealment of defendant's automobile from the view of motorists approaching from the south was the direct and proximate cause of plaintiff's injury.

The evidence in this case presented two divergent sets of essential facts under one of which the defendant would not have been guilty of the negligence charged and it was therefore necessary for the plaintiff to hypothesize in her verdict-directing instruction the facts essential in law to the verdict she sought. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500[2].

The plaintiff insists, however, that if the defendant deemed a "hypothesized fact or situation not to have been clearly or sufficiently hypothesized" he should have offered a clarifying or amplifying instruction, also citing the Hooper case, 260 S.W. 2d 496, 500–501[2]. Such rule can have no application in this case where there was total lack of hypothesization with respect to some items and the inclusion of other matters that had no place in the instruction.

The plaintiff also contends that the defendant cannot complain because his verdict-directing instruction "similarly omitted the postulates which the defendant complains in this court to be essential". The defendant's verdict-directing instruction was on the theory that the plaintiff's husband ran his automobile into the rear of defendant's car after it had completed its turn and was proceeding south and that the collision was due solely to the negligence of plaintiff's husband in failing to maintain a careful lookout. His instruction was in effect on the theory of a rear-end collision. The point which the plaintiff raises involves legal theory only and it is not necessary to determine if the defendant's instruction is defective. It is sufficient to say that the theory of defendant's instruction does not conflict with contentions now being made by him.

The quotation from paragraph 2 of § 304.018 had no place in Instruction No. 1 especially since the statutory language called for judicial construction. Because of its nature it could only tend to confuse the jury. The remainder of the instruction gave the jury a roving commission and permitted it to find for the plaintiff upon any interpretation it chose to put upon the statutory terms. On the whole it was confusing and misleading. For this and the other reasons stated, the giving of the instruction was prejudicial error. Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872, 875[1]; Berry v. Harmon, Mo., 329 S.W. 2d 784, 792[10]; Douglas v. Whitledge, Mo.App., 302 S.W.2d 294, 303, 304. The trial court should have granted a new trial as to all issues on the defendant's motion.

The judgment is reversed and the cause remanded.

All concur.